NOT DESIGNATED FOR PUBLICATION

No. 119,234

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROGER R. SMITH II,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed June 21, 2019. Affirmed.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., HILL, J., and STUTZMAN, S.J.

PER CURIAM: Roger R. Smith II entered into a plea agreement on the morning of his jury trial. In line with the terms of his agreement with the State, Smith then appeared before the judge who was to have presided over his trial and pled guilty to one of his original charges, attempted first-degree murder, and a second amended charge of kidnapping. A few days later, Smith filed a pro se document with the court clerk declaring his desire to withdraw those pleas. New counsel was appointed to represent Smith and, after an evidentiary hearing, the district court found Smith had not shown

1

good cause to allow his plea to be withdrawn under K.S.A. 2018 Supp. 22-3210(d)(1) and denied Smith's motion. Since we find no abuse of discretion by the district court, we affirm.

FACTS AND PROCEDURAL BACKGROUND

On January 20, 2016, the State charged Smith with one count of attempted first-degree murder and one count of aggravated kidnapping, both severity level 1 person felonies. In April, Steven Wagle was appointed to represent Smith, and a preliminary hearing was held on August 4 of that year. Prior to the preliminary hearing, the State extended a plea offer to Smith, proposing that Smith would plead guilty to the count of attempted first-degree murder and one count of kidnapping, a severity level 3 person felony. The parties would be free to argue for concurrent or consecutive sentences. Smith chose to reject that offer and go ahead with the preliminary hearing.

At that preliminary hearing, B.T., the alleged victim in this case, testified that Smith and three others attacked him on January 5, 2016, in Sedgwick County. During the course of the attack, B.T. said he was tied up and thrown into the trunk of a car where Smith stabbed him three times and said: "'You better hurry up and die, bitch, or else I'm going to kill your mother.'" The group then drove B.T., who was still in the trunk of the car, to an open field at which point he was taken out, forced to kneel down, and was hit multiple times in the head, neck, shoulders, arms, wrists, hands, and ankles. B.T. was unable to see what was being used to strike him, but he described it as "getting hit with a solid object." B.T. testified he later realized the object used to strike him was likely a gold machete. In B.T.'s estimation, the attack lasted approximately five minutes.

B.T. testified he was bleeding a lot. He said the attack only ended when he pretended to be dead and he heard Smith say: "'He's dead, let's go.'" Once they were gone, B.T. got up and walked toward the nearest trailer, but he passed out on the way. He eventually made it and was able to get treatment by EMS and was taken to a hospital.

2

B.T. testified that at the time of the preliminary hearing, his right "pointer" and middle fingers were still paralyzed, he was only recently able to make a fist with his left hand, and he still had scarring.

Wichita Police Detective Steven Molde also testified at the preliminary hearing about his role in the investigation of the attempted murder of B.T. and specifically about Molde's interview with Smith. Molde testified that over the course of that interview, Smith admitted he was present during the attack on B.T. but denied any direct involvement. Smith told Molde about the machete and said one of the other attackers, Quentin Gable, got the machete from the vehicle. Molde said Smith told him Gable also was the one who stabbed B.T. when he was in the trunk.

In the interview with Molde, Smith claimed when they were out in the field, he handed the machete to Gable but then said: "'[D]ude, I'm going to get out of here. I mean I'm not trying to . . . be down with, you know, trying to kill somebody.'" Smith did, however, say he had B.T.'s blood on him and they went to his uncle's house to hose it off. When they got there, Smith's uncle was home, and Smith said they explained their bloody appearance by making up a story about hitting an animal and needing to clean themselves up.

After Molde's testimony, the State rested and Smith declined to present any evidence. The district court found there was probable cause to believe Smith committed both counts as charged and bound him over for arraignment. Smith pled not guilty to each count and the case was set for trial.

A number of continuances followed before the case was set for trial, to begin April 17, 2017. The Friday before trial, April 14, 2017, the court held a hearing to address various pretrial issues, such as a motion in limine and a request by Smith to exclude some of the State's photos as unnecessary, repetitive "gruesome photos." Another pending item

was the need for a hearing to determine the voluntariness of Smith's statements to police. See *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964). However, rather than take up that issue at the pretrial hearing, the district court and the parties agreed to hold the *Jackson v. Denno* hearing before beginning jury selection on the first day of trial.

When the parties convened for trial on Monday, April 17, 2017, they initially reviewed some of the evidentiary issues that had been argued and decided on April 14 and then began to organize the exhibits for the hearing on Smith's statements. But before they could begin that hearing, the following exchange took place:

> "[Defense counsel]: Judge, can I have one minute with [counsel for the State] out of the courtroom?
> "THE COURT: Sure.
> "(A brief pause in the proceedings, after which the following occurred:)
> "[COUNSEL FOR THE STATE]: Judge, can counsel approach?
> "THE COURT: Sure.
> "(A brief conference was had at the bench between the Court and counsel, outside the hearing of the reporter, after which the following occurred:)
> "THE COURT: Okay, go on the record in the State of Kansas versus Roger R. Smith, II, Case Number 16 CR 192, back on the record, basically. Counsel for both parties and [counsel] for the State, [defense counsel] and Mr. Smith is present in the courtroom.
> "Mr. Smith, I got the plea paperwork in front of me."

Defense counsel Steven Wagle would testify later that this shift in the direction of the proceedings was prompted by Smith telling him he wanted to accept the plea deal offered the preceding Friday. Wagle then used the first break to ask the State whether the plea offer was still on the table. After confirming that it was, Wagle used a second break to go over both the plea agreement and the acknowledgement of rights form with Smith. He did so by reading the forms to Smith and then discussing them with him privately in

4

the jury room. Wagle testified that the second break lasted between 30 and 40 minutes and the plea offer was essentially the same as the one that had been made prior to the preliminary hearing eight months earlier.

When the parties returned to the courtroom after the second break, they moved from preparation for the *Jackson v. Denno* hearing to a hearing on the plea agreement. Accordingly, the district court engaged in a colloquy with Smith about Smith's understanding of the agreement and the consequences of a change in his pleas. That exchange included a reading of the plea agreement, as well as a reminder that the district court was not a party to that agreement, was not bound by its terms, and was free to impose any legal sentence it deemed appropriate. The court also asked whether Smith was making his own choice after being fully advised by his attorney, and whether he was satisfied with his attorney's services. Finally, the colloquy included a review of the factual basis for each count, Smith's admission that the factual bases were accurate, and Smith's confirmation that he was pleading guilty because he was guilty. The district court found Smith had "knowingly, willingly, voluntarily with a complete understanding of the consequences waived his constitutional rights, including his right to a jury trial," accepted the guilty pleas, and found Smith guilty of one count of attempted first-degree murder, a level 1 person felony, and one count of kidnapping, a level 3 person felony.

On April 28, 2017, the clerk of the district court filed a pro se document from Smith, dated April 21, 2017, titled as a "copy of correspondence" from Smith to Wagle. The first paragraph read:

> "Dear Mr. Wagle
>
> "I am writing this to tell you that from what I've heard, I'm able to take back my plea bargain within 14 days. Well I really want to take back my plea. I felt pressured and now that I've had time to sleep on it, I really know now I don't want to take that plea. "Please contact me as soon as possible. File whatever motions or whatever need be. I expect to see you as soon as you get this, please don't delay as I want this to occur within

the applicable 14 day time limit. I apologize for any inconvenience this may have caused."

Wagle eventually received the letter from the clerk and, on June 22, 2017, he filed a motion to withdraw Smith's plea in which he simply stated: "Defendant has instructed his attorney to withdraw his plea." On June 30, 2017, Smith filed an additional pro se motion to withdraw plea, which also stated he had instructed his attorney to withdraw his plea. The district court set the motion for a hearing on August 17, 2017, and appointed new counsel to represent Smith. Both motions were filed well before the district court sentenced Smith.

At the hearing on the motion to withdraw plea, Smith testified on his own behalf and made a number of different claims, including: (1) he misunderstood the plea offer and thought he was getting a different plea deal; (2) he felt pressured to accept the plea deal and Wagle was feeding him answers during the plea colloquy; and (3) he did not think Wagle would make any effort to defend him at trial because he had earlier told Smith that they were "not going to win and that the case is a bad case," so he should consider taking a plea. Wagle also testified and, while his testimony confirmed a few minor aspects of Smith's claims, it largely refuted them. The district court found Smith had failed to show good cause to withdraw his plea and denied his motion.

The district court sentenced Smith on February 16, 2018, to 241 months in prison followed by 36 months of postrelease supervision. Smith timely appeals.

ANALYSIS

Smith raises two issues for our review: (1) that the district court committed error when it denied his motion to withdraw his guilty pleas; and (2) that the district court

6

violated his Sixth and Fourteenth Amendment rights by using his criminal history to increase his sentence without first proving it to a jury beyond a reasonable doubt.

*Motion to withdraw plea*

Our Supreme Court has set the standard for review of a motion to withdraw plea before sentencing:

"K.S.A. 2010 Supp. 22-3210(d)(1) provides that a guilty plea may be withdrawn 'for good cause shown and within the discretion of the court' at any time before the sentence is adjudged. Based on that statutory language, we have held that '[t]his court will not disturb a district court's decision to deny defendant's presentence motion to withdraw his [or her] guilty plea unless the defendant demonstrates that the judge abused his or her discretion. [Citation omitted].' *State v. Denmark-Wagner,* 292 Kan. 870, 875, 258 P.3d 960 (2011)." *State v. Macias-Medina*, 293 Kan. 833, 836, 268 P.3d 1201 (2012).

A district court abuses its discretion if its action is:

"(1) arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011).

In exercising that discretion, "the trial court should evaluate whether '(1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandably made.' [Citation omitted.]" *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). Otherwise known as the *Edgar* factors, all of them "need not apply in a defendant's favor

in every case, and other factors may be duly considered in the district judge's discretionary decision on the existence or nonexistence of good cause." *State v. Aguilar*, 290 Kan. 506, 513, 231 P.3d 563 (2010).

Smith claims he showed good cause for withdrawal of his plea in two ways: "(1) he did not understand the plea, and (2) he was coerced." We find neither of these claims is persuasive.

With respect to his contention that he failed to understand his pleas, Smith points to the document we referred to above that he filed with the district court clerk not long after the plea hearing. The full title was "Copy of Correspondence between Attorney M. Steven Wagle and Myself Roger Ray Smith II." The relevant part for present purposes stated:

"I am writing this to tell you that from what I['']ve heard, I'm able to take back my plea bargain within 14 days. Well I really want to take back my plea. I felt pressured and now that I've had time to sleep on it, I really know now I don't want to take that plea."

Smith contends this shows he did not understand his plea and he argues that the defendant's acknowledgment of rights associated with his plea failed to inform him that his plea could only be withdrawn before sentencing for good cause shown. Smith further faults the district court for failing, during the plea hearing, to tell him he would only be able to withdraw his plea by showing good cause to do so. In fact, Smith asserts the district court "acknowledge[d] that [he] had a misunderstanding about whether he could withdraw his plea within 14 days of entering it."

After hearing from the parties on the motion to withdraw plea, the district court discussed each of the *Edgar* factors. The court recognized those factors are nonexclusive, but limited its findings to the *Edgar* factors because it found no support elsewhere for

8

Smith's motion. First, the court rejected a claim that Wagle did not represent Smith competently. The district court commented that if a lawyer tells a defendant that he has a bad case and is likely to lose—and that is his honest professional assessment—he would not be doing his job if he kept that opinion from his client. The court noted the experience and competence Wagle had shown in other serious cases and, while acknowledging incomplete knowledge about Smith's case, the court remarked that nothing it had seen in Smith's case was inconsistent with Wagle's reported evaluation.

Next, the district court addressed whether Smith was "misled, coerced, mistreated, or unfairly taken advantage of" and also found no basis for good cause in that category. The court was persuaded that the plea Smith accepted was the same he was offered at or before the preliminary hearing, meaning he had at least eight months to consider that offer before taking it. The district court was persuaded it was Smith who raised the question of a plea deal as the parties finished preparations for trial, felt he had allowed sufficient time for Smith to discuss it privately with Wagle, and considered the fact that Smith was a college graduate.

Finally, as the district court said, "it ultimately comes down to [whether] this [was] fairly and understandingly made." The court saw no unfairness and referred again to the period of time Smith had known of that offer, the fact Smith was a college graduate, and the content of the plea colloquy between the court and Smith. In the district court's view, Smith understood his plea. The court did mention both "misunderstanding" and "the 14 days issue" in the same sentence, but not as a finding that Smith might have had some grounds for wrongly thinking he had a time within which he could withdraw his plea. Rather, the court mentioned that in conjunction with what the court characterized as "truly a buyer's remorse situation."

After our review, we have no quarrel whatsoever with the district court's conclusion that there was no basis for a finding of good cause to allow Smith to withdraw

9

his plea. Smith now asserts simply that "from what [he] heard" he could take back his plea within 14 days. Smith does not disclose how he came by the information about retractions being allowed within 14 days. He offers no analysis that would lead to a conclusion that such a misunderstanding should rise to the level of good cause to withdraw his plea. And significantly, Smith does not explain how an incorrect *after-the-fact* belief about his ability to take back his plea could have affected the plea he had already made.

As the district court verified with Smith during the colloquy, Smith had the time he needed to discuss the plea with Wagle before appearing before the court, and the court offered to take breaks to allow Smith to speak further with his counsel if a question arose after that. Smith confirmed the medications he was taking and the absence of any effect on his ability to understand the proceedings. The district court's plea colloquy was thorough and clear, and Smith's responses were equally clear about the rights he was giving up, the consequences of changing his pleas, and the potential sentence he faced. Smith has not shown the district court committed any error by finding the plea was knowingly made.

Smith also argues he was coerced into accepting the plea agreement and changing his pleas because Wagle told him he had a bad case and would likely be convicted. Based on those statements, Smith claims that he did not think Wagle would even try to defend him and therefore he "believed his choices were to go to trial with no defense or even an effort by defense counsel, or enter a plea." But once again, Smith's argument lacks support in the record.

Wagle conceded he gave Smith his honest assessment of the case based on a review of all the evidence and in his view, this was "not a good case for Mr. Smith." But that is not enough to constitute coercion and is instead exactly what Wagle was obligated to do under the Kansas Rules of Professional Conduct. See KRPC 2.1 (2019 Kan. S. Ct.

10

R. 345) ("In representing a client, a lawyer shall exercise independent professional judgment and render candid advice."). We are unwilling to conclude that Smith was coerced into changing his pleas because of the subjective belief he now voices about what Wagle would or would not have done in his defense. Smith did not contemporaneously express that concern to the district court, through any statement or response, when he entered his pleas.

We find Smith has failed to show the district court acted upon any error of fact or law, or that the district court's reasoning and ruling were inconsistent with the view a reasonable person might take after considering all of the evidence and the record. In other words, Smith has shown no abuse of discretion.

*Use of Smith's criminal history in his sentencing*

Smith's other issue is a claim that the district court violated his Sixth and Fourteenth Amendment rights when it used his criminal history score and the revised Kansas Sentencing Guidelines Act (KSGA) sentencing grid to increase his sentence without first requiring the State to prove the previous convictions to a jury beyond a reasonable doubt. When a defendant challenges the constitutionality of the revised KSGA sentencing grid, it is a question of law over which appellate courts exercise unlimited review. *State v. Ivory*, 273 Kan. 44, 46, 41 P.3d 781 (2002).

Smith acknowledges that this issue has been definitively decided by the Kansas Supreme Court. See *Ivory*, 273 Kan. at 44. This panel "is duty bound to follow Kansas Supreme Court precedent unless there is some indication that the court is departing from its previous position." *State v. Beck*, 32 Kan. App. 2d 784, 788, 88 P.3d 1233 (2004). Our Supreme Court has shown no indication of changing its position on this question.

Affirmed.