No. 102,234

STATE OF KANSAS, *Appellee*, v. CHARLES DENMARK-WAGNER, *Appellant*.

(258 P.3d 960)

Opinion filed August 12, 2011.

*Heather R. Cessna*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Clay Britton*, assistant solicitor general, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Defendant Charles Denmark-Wagner appeals the denial of his motion to withdraw his plea of guilty to one count of felony first-degree murder. He also challenges his sentence to lifetime postrelease and the district judge's order that he register as a violent offender for his lifetime.

This case arose out of the November 2008 murder of Alesia Dorris-Graham in her home in Pratt County. Denmark-Wagner and codefendant Daniel John Riendeau went to Dorris-Graham's home to purchase prescription drugs from her. When she refused to sell, the defendants took the drugs by force. Riendeau confronted Dorris-Graham in her bedroom and stabbed her to death.

The complaint filed against Denmark-Wagner contained four counts: Count 1—felony first-degree murder (K.S.A. 21-3401[b]) with the underlying felony of aggravated robbery (K.S.A. 21-3427) and/or aggravated burglary (K.S.A. 21-3716) or, in the alternative, felony first-degree murder (K.S.A. 21-3401[b]) with the underlying felony of attempted possession of opiates and/or narcotics (K.S.A. 2008 Supp. 65-4160; K.S.A. 22-3301); Count 2—aggravated robbery (K.S.A. 21-3427); Count 3—aggravated burglary (K.S.A. 21-

3716); Count 4—attempted possession of opiates, opium, narcotic drugs or designated stimulants (K.S.A. 2008 Supp. 65-4160; K.S.A. 21-3301).

Denmark-Wagner entered into a written plea agreement on February 25, 2009, on Count 1, on the theory that he participated in a murder committed in the course of an aggravated robbery and/or aggravated burglary. In exchange, the State agreed to dismiss Counts 2, 3, and 4. The plea agreement stated: "I understand that the mandatory sentence for Count [1] is life in prison and that I will be sentenced to life in prison." At the time of his plea agreement, Denmark-Wagner was 18 years old and had completed 12 years of schooling. Through his attorney, he stated that he would accept the plea on February 13, 2009.

Denmark-Wagner's written plea agreement repeated that his sentence would be "[l]ife in prison and a fine of up to $300,000.00," and Denmark-Wagner acknowledged: "I understand that if I enter a plea of guilty this court must impose a life sentence against me." In the agreement, Denmark-Wagner also signed the following statement:

"After fully discussing my potential defenses to the charges in this case, the legal options available to me in these proceedings, and the above-mentioned matters with my attorney, I advise this court that I understand it is my decision, alone, whether to accept or reject the plea agreement and whether to enter a plea of guilty to the charge(s) herein. My decision to accept the plea agreement and change my plea is completely voluntary without anyone having threatened me or promised me anything of benefit, and it is without duress or coercion other than that which the plea agreement provides."

In the agreement, Denmark-Wagner further stated that the only drug or medication he had taken during the preceding 48 hours was "trazadone," affirming that "[a]ny such drugs or medications do not impair my mental faculties or [judgment]. I remain in full control of my mental faculties or [judgment]."

At the plea hearing on February 25, 2009, the district judge thoroughly described all of the rights that Denmark-Wagner would waive by pleading guilty and confirmed that Denmark-Wagner understood his rights. When asked, "Are you entering a plea of guilty to this crime because you are, in fact, guilty of this crime?" Den-

mark-Wagner asked, "May I have a second to talk to my lawyer?" After being permitted to consult counsel, he answered, "Yes, sir." During the hearing, Denmark-Wagner also confirmed that he had signed the written plea agreement and that he did not have any questions regarding the document. He denied that any threats or promises had been made to induce him to plead guilty rather than proceed to trial. Further, Denmark-Wagner's counsel stated, "I have personally spent numerous hours with Mr. Denmark-Wagner going over the evidence, possible defenses that could have been raised[;] and I am satisfied that he is doing this intelligently and freely and voluntarily." The district judge also asked Denmark-Wagner about his understanding of the sentence he was facing, "[Y]ou understand that the penalty for murder in the first-degree is life in prison, a fine of up to $300,000, or both a prison sentence and a fine and that potentially you could spend the rest of your natural life in the custody of the Secretary of Corrections?" Denmark-Wagner responded affirmatively.

Denmark-Wagner moved to withdraw his plea on March 9, 2009, before his sentencing. In his motion, Denmark-Wagner argued that his plea of guilty was not entered into voluntarily because "he entered the guilty plea as a result of pressure placed upon him by his family to accept the plea agreement." He also argued that his plea of guilty was not entered into intelligently because "he did not fully understand the possible sentence that he would receive."

At the hearing on the motion to withdraw 2 days later, Denmark-Wagner testified that his mother and sister pressured him into accepting the plea because "[m]y family thought it would be better for me to go so they can see me sooner and just be able to hug me and stuff during visitation instead of waiting and seeing me through the glass." Denmark-Wagner stated that he agreed to the plea because he "didn't want to just up and say the opposite of what everyone wanted [him] to do." During his cross-examination by the State, Denmark-Wagner engaged in the following exchange:

"Q. Okay, but ultimately it was your decision to go ahead and enter the plea?

"A. Yeah, I did. They can't say it for me.

"Q. But ultimately, I mean, I'm not trying to trick you. Ultimately it's your decision to do it?

"A. Yes.

"Q. Okay. And now you have second thoughts about it?

"A. Well, I didn't—my thought of what I wanted to do was not take the plea.

"Q. Okay. Well, you're the one that wanted—told your attorney you wanted to take the plea, right?

"A. That's because my mother told me."

Denmark-Wagner also testified that he did not understand the possible sentence, believing he would be released from prison in 20 years rather than merely be eligible for parole in 20 years. As his explanation for what led him to this belief, Denmark-Wagner said, "I must have misread things wrong because that's how I assumed it would be." On this subject, Denmark-Wagner engaged in the following exchange with the State:

"Q. . . . You signed a plea agreement in this case, is that correct?

"A. Yes, sir.

"Q. The plea agreement said that you understood that the Count 1, the penalty is life in prison, correct?

"A. Yes, with getting out after 20.

"Q. And you read that life in prison, right?

"A. And I get out after 20.

"Q. Does it say that in the plea agreement?

"A. It says somewhere.

"Q. It does? And so it should be in the plea agreement if it says that, right?

"A. Yeah.

"Q. Well, because the plea agreement I have only says the penalty is life in prison. Where [does] the get out after 20 come from?

"A. What I understood from the plea agreement [was] that I was getting out after 20 years.

"Q. Okay. And it should be in the plea agreement, then, right, if it said that?

"A. Umm . . .

"Q. I mean, you would agree if it said it in the plea agreement then the Judge should be able to find it in there, right?

"A. Yes."

The district court specifically noted that Denmark-Wagner's plea agreement did not mention that a life sentence translates into release in 20 years, stating:

"The suggestion that the means of how one visits with family at the Pratt County Jail, talking through glass rather than being able to hug them or touch them or matters of that nature does not constitute grounds to withdraw the plea from the Court's perspective.

"The suggestion that the plea agreement misstated the potential sentence, the Court has carefully reviewed the plea agreement which was filed with the Court on February 25th and the suggestions that it indicated that he would not serve more than 20 years of a life sentence is nowhere set forth in that plea agreement and the motion to withdraw his plea would be denied."

The district court judge immediately sentenced Denmark-Wagner to life in prison with a minimum sentence of 20 years. Denmark-Wagner also was sentenced to lifetime postrelease supervision and ordered to register under the Kansas Offender Registration Act for his lifetime.

## WITHDRAWAL OF GUILTY PLEA

Whether a defendant's guilty plea may be withdrawn is controlled by statute, K.S.A. 22-3210(d), which provides: "A plea of guilty or *nolo contendere*, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." This court will not disturb a district court's decision to deny defendant's presentence motion to withdraw his guilty plea unless the defendant demonstrates that the judge abused his or her discretion. *State v. Plotner*, 290 Kan. 774, 777, 235 P.3d 417 (2010). The defendant bears the burden of establishing such an abuse. *Plotner*, 290 Kan. at 777 (citing *State v. White*, 289 Kan. 279, 284-85, 211 P.3d 805 [2009]). Judicial discretion is abused where no reasonable person would take the district judge's view. *Plotner*, 290 Kan. at 777 (quoting *State v. Ortega-Cadelan*, 287 Kan. 157, 165, 194 P.3d 1195 [2008]).

Historically, this court focused on three factors to be considered in determining whether a defendant has demonstrated good cause to withdraw his or her plea under K.S.A. 23-3210(d): (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Aguilar*, 290 Kan. 506, 511, 231 P.3d 563 (2010). We have now clarified that these factors are "viable benchmarks for judicial discretion," but that "[a]ll of the . . . factors need not apply in defendant's favor in every case, and other factors may be duly considered in the district judge's discretionary decision on

the existence or nonexistence of good cause." *Aguilar*, 290 Kan. at 512, 513.

Denmark-Wagner first asserts that his plea was not voluntarily entered into because he was coerced by his mother and sister into taking the plea agreement. In his view, such family pressure constitutes good cause to allow him to withdraw his plea.

In *Williams v. State*, 197 Kan. 708, 421 P.2d 194 (1966), and in *Wippel v. State*, 203 Kan. 207, 453 P.2d 43 (1969), this court considered similar arguments and rejected the defendants' claims.

In *Williams*, the defendant argued that his attorney and his wife pressured him into pleading guilty to statutory rape "by pointing out the damage to the reputation of his stepdaughter and the worry and strife a trial would cause his wife." 197 Kan. at 710. This court concluded that "[e]very man charged with crime is influenced by personal considerations which may later not appear valid to him, but psychological self-coercion is not the coercion necessary in law to destroy an otherwise voluntary plea of guilty." *Williams*, 197 Kan. at 711.

In *Wippel*, the defendant alleged that he was pressured by his attorney into pleading guilty because his attorney advised him that "if he did not do so, both he and his neighbor might be prosecuted for attempted bribery" and because the plea was made "with the understanding" that his sentence would be short enough so that his children would not be placed in foster care. 203 Kan. at 209. As in *Williams*, this court concluded that "[t]hese personal considerations now being voiced by [defendant] may have been of some psychological influence on his decision to plead guilty; but personal considerations of this nature do not constitute the coercion required to vitiate an otherwise voluntary plea." *Wippel*, 203 Kan. at 209.

Denmark-Wagner attempts to distinguish *Williams* and *Wippel* on the grounds that both involved plea withdrawals *after* sentencing rather than before sentencing. It is true that the statutory standard for withdrawal of a plea after sentencing is higher for a defendant—manifest injustice rather than good cause. However, as the State has pointed out, *Williams* and *Wippel* do not appear to rely upon, or even discuss, this difference.

Further, although not binding on this court, the Court of Appeals has recently considered *Williams* and *Wippel* and found them to be influential in its analysis of a motion to withdraw a guilty plea before sentencing. *State v. Bartlow*, No. 96,933, 2008 WL 2051672, at *3 (unpublished opinion), *rev. denied* 286 Kan. 1180 (2008). In *Bartlow*, the defendant argued that he demonstrated good cause to withdraw his plea before sentencing because his parents had pressured him into taking the plea. The Court of Appeals held that, as there was a thorough plea hearing during which the defendant was informed of his rights, the defendant stated that he understood his rights, and the defendant stated he was not coerced into pleading guilty, the plea would not be disturbed because of a defendant's mere " 'change of mind.' " 2008 WL 2051672, at *3. Absent any "evidence his plea was made unwillingly or without an understanding of the consequences," such a change of mind was not enough to show good cause. 2008 WL 2051672, at *4. Pressure by the defendant's parents was insufficient. 2008 WL 2051672, at *4.

We evaluate Denmark-Wagner's argument with these precedents in mind.

Denmark-Wagner argues that he was coerced into pleading guilty purely because his mother and sister wanted to be able to see him sooner and hug him during visitation. Denmark-Wagner originally affirmed that his plea was freely made in his written plea agreement and again when he entered his plea in court. At the hearing to withdraw his plea, Denmark-Wagner maintained that he had never wanted to enter the plea, but he acknowledged that it was ultimately his own choice to make to do so. Further, Denmark-Wagner acknowledged that he knew the decision whether to accept the plea agreement was his. As with the defendants in *Williams*, *Wippel*, and *Bartlow*, Denmark-Wagner appears to have given heavy weight to the advice of others, but he made his own decision. We hold that the district judge did not err in refusing to grant the motion to withdraw Denmark-Wagner's plea as involuntary. Whatever family pressure existed did not rise to the level of good cause.

As he did in district court, Denmark-Wagner also argues here that his plea of guilty was not intelligently entered into because he misunderstood the possible sentence, believing that life in prison meant he would be released rather than merely eligible for parole after 20 years. The essence of Denmark-Wagner's argument is that he misunderstood what "life in prison" means. Although the district court explained to Denmark-Wagner that the sentence meant that he could spend *the rest of his natural life in prison*, Denmark-Wagner maintains that, as an 18 year-old, he thought 20 years seemed like the rest of his life.

At this level, Denmark-Wagner also argues that his plea was not intelligently entered into because he was taking trazodone at the time of his plea agreement. Neither party has provided this court with information on what type of medication trazodone is or its effects. Further, nothing in the record indicates why Denmark-Wagner was taking the drug or any side effects he may have personally experienced. Denmark-Wagner indicated in his written plea agreement that he had taken "trazadone" within 48 hours of signing the agreement, but he affirmed that it did not impair his mental faculties or judgment. He now asserts that the district judge abused his discretion by "fail[ing] to ask at the plea hearing about [defendant's] medication and its [effects] on his understanding of the proceedings and when [he] failed to inquire again about the drug at the plea withdrawal hearing." This, Denmark-Wagner asserts, was a "potentially important factor" in determining whether his plea was knowingly made.

Although the trazodone ground for withdrawing Denmark-Wagner's plea could be construed as a new issue not raised below, it is more fairly characterized as additional support for Denmark-Wagner's claim that his plea was unintelligent, a claim he did present below. We treat it that way in the following discussion.

We note initially that there is nothing in the statute governing acceptance of pleas to require a judge to ask specifically about medications the defendant may be taking, as long as the court ensures: (1) that the defendant is informed of the maximum penalty that may be imposed if the defendant accepts the plea, (2) that the defendant understands the nature of the charge, and (3) that the

defendant understands the consequences of pleading guilty. K.S.A. 22-3210(a)(2), (3).

In *State v. Adams*, 284 Kan. 109, 115-16, 158 P.3d 977 (2007), this court found that the district court judge properly exercised his discretion in denying a presentence motion to withdraw defendant's plea on the grounds that he did not understand the difference in the possible charges and sentences. In reaching its decision, this court focused on the facts that the judge inquired during the plea hearing about whether the defendant understood the possible sentences and that the defendant gave an affirmative response. *Adams*, 284 Kan. at 115.

In *State v. Harned*, 281 Kan. 1023, 135 P.3d 1169 (2006), this court also reviewed a motion to withdraw a plea under the good cause standard. One of the defendant's claims was that he misunderstood the sentence likely upon conviction, believing that felony murder would draw 20 years. Although this court ultimately did not reach this issue because it was abandoned, the court noted that the trial court informed the defendant of the sentence during the plea hearing and that counsel testified that he had informed the defendant of the sentence. *Harned*, 281 Kan. at 1043.

In *State v. Frost*, No. 100,743, 2010 WL 1379112 (Kan. App. 2010) (unpublished opinion), the defendant attempted to withdraw his plea, arguing that the pain medication he had taken clouded his judgment. The defendant raised this as an obstacle to a valid plea at a hearing on his motion to withdraw. The Court of Appeals concluded that the district judge had properly exercised his discretion in denying the defendant's motion, because the judge had inquired into the defendant's mental state and had determined that the defendant was competent to enter a plea. Moreover, the defendant's attorney had testified that he did not notice that the defendant was under the influence. *Frost*, 2010 WL 1379112, at *4. The court noted favorably a prior Court of Appeals decision, concluding that a " 'defendant who is taking prescription drugs, and who informs the court that he or she is not under the influence of any intoxicating drugs, is able to make a voluntary plea.' " *Frost*, 2010 WL 1379112, at *4 (quoting *State v. Christiansen*, 23 Kan.

App. 2d 910, 913, 937 P.2d 1239 [1997], *disapproved on other grounds by State v. Bolin*, 266 Kan. 18, 968 P.2d 1104 [1998]).

Like the defendants in *Adams* and *Harned*, Denmark-Wagner claims that he did not understand the meaning of his sentence, but all of the evidence in the record refutes this claim. The written plea agreement and the plea hearing both demonstrate that Denmark-Wagner was well informed about his likely sentence and that he affirmed his understanding of this information. At the hearing on his motion to withdraw his plea, Denmark-Wagner could not point to anything suggesting that life in prison meant anything other than a prison term up to the length of Denmark-Wagner's entire natural life. In fact, the district judge confirmed during the plea hearing that Denmark-Wagner understood that a life sentence meant Denmark-Wagner could spend "the rest of [his] natural life" in prison. Denmark-Wagner's assertion that his plea was unintelligently made on this basis is meritless.

Regarding the trazodone, although the district judge here did not directly address Denmark-Wagner's medication in the hearing on the motion to withdraw his plea, as the judge did in *Frost*, *Frost* still is persuasive; Denmark-Wagner had already informed the court through his written plea agreement that the drug had no impact on his ability to make an intelligent plea. Moreover, there is nothing in the record from the plea hearing to contradict Denmark-Wagner's confirmation in the written agreement that trazodone did not impair his mental faculties or judgment. In fact, from the record, Denmark-Wagner appears to have been actively and sensibly engaged in the proceedings, even asking to confer with his attorney at one point.

Based on the record, the district judge did not abuse his discretion in determining that Denmark-Wagner understood his plea and likely sentence and thus refusing to permit withdrawal of Denmark-Wagner's plea as unknowingly or unintelligently made.

### Lifetime Postrelease and Offender Registration

During sentencing, Denmark-Wagner was informed by the court that he had 10 days to appeal the sentence or to challenge the denial of his motion to withdraw. Denmark-Wagner's attorney

did not object to the legality of any facet of her client's sentence at the hearing. Further, nothing in the record suggests that Denmark-Wagner filed a motion to correct an illegal sentence before the district court. However, an illegal sentence can be corrected at any time. K.S.A. 22-3504(1). Denmark-Wagner now challenges both the lifetime postrelease and lifetime offender registration features of his sentence as illegal, and the question of whether a sentence is illegal is subject to unlimited appellate review. *State v. Davis*, 288 Kan. 153, 154, 200 P.3d 443 (2009).

The State concedes that Denmark-Wagner's lifetime postrelease and registration requirements did not conform to the governing statutory provisions. An illegal sentence under K.S.A. 22-3504(1) " 'is a sentence imposed by a court without jurisdiction; a sentence that does not conform to the statutory provision, either in the character or the term of the punishment authorized; or a sentence that is ambiguous with respect to the time and manner in which it is to be served.' " *State v. Peirano*, 289 Kan. 805, 807, 217 P.3d 23 (2009) (quoting *State v. Gracey*, 288 Kan. 252, 261, 200 P.3d 1275 [2009]).

Under K.S.A. 2008 Supp. 22-3717(b)(2), "an inmate sentenced to imprisonment for an *off-grid offense* committed on or after July 1, 1999, shall be eligible for *parole* after serving 20 years of confinement without deduction of any good time credits." (Emphasis added.) In contrast, under K.S.A. 2008 Supp. 22-3717(d)(1), "[p]ersons sentenced for crimes, *other than off-grid crimes*, committed on or after July 1, 1993, or persons subject to subparagraph (G) [persons convicted of a sexually violent crime], *will not be eligible for parole*, but will be released to a mandatory period of *postrelease supervision* upon completion of the prison portion of their sentence . . . ." (Emphasis added.) Denmark-Wagner argues that "[p]ostrelease and parole are two distinct terms in the Kansas criminal justice system" and that, under the statute, his sentence can include only parole, not postrelease supervision.

In *State v. Ballard*, 289 Kan. 1000, 1014, 218 P.3d 432 (2009), this court explained the statutory distinction between parole and postrelease supervision as follows:

"The term 'parole' generally means 'the release of a prisoner to the community by the Kansas parole board prior to the expiration of such prisoner's term.' K.S.A. 21-4602(d). Thus, 'parole' is a term of art that is limited to off-grid crimes . . . . By contrast, the term 'postrelease supervision' generally means 'release of a prisoner to the community after having served a period of imprisonment or equivalent time served in a facility where credit for time served is awarded as set forth by the court, subject to conditions imposed by the Kansas parole board and to the secretary of correction's supervision.' K.S.A. 21-4703(p). This term has traditionally been applied to only grid crimes."

A sentence of life imprisonment is an indeterminate sentence under which a defendant is subject to parole, rather than a determinate sentence under which a defendant will be placed on postrelease supervision. See *Ballard*, 289 Kan. at 1014. Further, "the time served on parole is limited by the sentence of confinement," while the "time served on postrelease supervision is not." *State v. Guadina*, 284 Kan. 354, 361, 160 P.3d 854 (2007).

Based on the clear language of K.S.A. 2008 Supp. 22-3717(b)(2) and (d)(1), because Denmark-Wagner was sentenced to life in prison for an off-grid offense, Denmark-Wagner is eligible for parole after 20 years and should not be subject to postrelease supervision. Therefore, as both Denmark-Wagner and the State agree, Denmark-Wagner's sentence of lifetime postrelease does not conform to the statute and is illegal. The postrelease supervision portion of Denmark-Wagner's sentence must be vacated.

Denmark-Wagner's argument on lifetime offender registration also has merit. At the most, under K.S.A. 2008 Supp. 22-4902 and K.S.A. 22-4906, he was eligible for a 10-year registration requirement. The State agrees.

Under K.S.A. 22-4906(a), any person who is a "violent offender" under the terms of the statute is required to register under the Kansas Offender Registration Act, K.S.A. 22-4901 *et seq*. A violent offender includes any person convicted of murder in the first degree. K.S.A. 2008 Supp. 22-4902(a)(2), (d)(2). Murder in the first degree includes felony murder. K.S.A. 21-3401(b). A violent offender also includes any person convicted of a person felony after the court makes a finding on the record that a deadly weapon was used in the commission of that felony. K.S.A. 2008 Supp. 22-4902(a)(7). Any person required to register for a first conviction

must register "for a period of 10 years after paroled, discharged or released, whichever date is most recent." K.S.A. 22-4906(a). Upon a second or subsequent conviction, a person must instead register "for such person's lifetime." K.S.A. 22-4906(a).

Here, pursuant to the terms of his plea agreement, Denmark-Wagner was convicted of one count of felony first-degree murder. Under the terms of the plea agreement, all other charges against the defendant stemming from the same underlying events were dropped. Denmark-Wagner's journal entry of judgment notes that he was sentenced to register as a violent offender because of his conviction of murder in the first degree. The journal entry also notes that he was required to register as a violent offender because of his conviction of a person felony with a finding on the record that the felony was committed with a deadly weapon.

Although the State presented evidence during the plea hearing that Denmark-Wagner's codefendant used a knife to stab and kill the victim, the district court appears not to have made any specific finding on the record that the crime was committed with a deadly weapon, instead asking Denmark-Wagner only if "for purposes of this plea is [the State's account of the facts of the crime] substantially correct as to what occurred?" Even if the district court's question to Denmark-Wagner could be construed as leading to a finding that the crime was committed with a deadly weapon, there appears to be no showing in the record that such a use of a deadly weapon was a second or subsequent crime requiring lifetime registration.

Denmark-Wagner has two prior juvenile adjudications for petit theft, a juvenile adjudication for a possession of marijuana, and a juvenile adjudication for burglary of a structure. All of these adjudications occurred in Florida. Denmark-Wagner's adjudication for the burglary of a structure was classified in the presentence report as a juvenile felony person. There is nothing in the record demonstrating that Denmark-Wagner's burglary of a structure involved the use of a deadly weapon.

Further, this court held in *State v. Jackson*, 291 Kan. 34, 39-40, 238 P.3d 246 (2010), that juvenile adjudications and extended jurisdiction juvenile proceedings for Kansas crimes are not convictions for the purposes of the Kansas Offender Registration Act.

Instead, the registration statute applies only to "convictions arising from adult prosecutions." *Jackson*, 291 Kan. at 40. Although Denmark-Wagner's juvenile proceedings were in Florida, there is nothing in the statutory scheme to suggest that they should be treated differently from a juvenile adjudication in Kansas. Therefore, even if Denmark-Wagner's prior juvenile adjudications were for crimes specified in K.S.A. 22-4906 for which a "second or subsequent conviction" would result in lifetime registration, this court has made clear that such juvenile proceedings are not within the scope of the statute.

An addendum to Denmark-Wagner's presentence report states that Denmark-Wagner was on felony bond for felony possession of illegal drugs and for burglary when the crime at issue here was committed. However, nothing in the record shows a conviction for either of these crimes.

Based on the clear language of K.S.A. 22-4906, because Denmark-Wagner has only one eligible conviction, Denmark-Wagner should have been sentenced to register as an offender for a period of 10 years, not life. The lifetime offender registration requirement of his sentence does not conform to the statute and is illegal. It must be vacated.

## CONCLUSION

In view of all of the foregoing discussion, Denmark-Wagner's conviction of first-degree felony murder is affirmed and the lifetime postrelease and offender registration portions of his sentence are vacated. This case is remanded to the district court for resentencing to correct the offender registration period.

RICHARD M. SMITH, District Judge, assigned.