NOT DESIGNATED FOR PUBLICATION

No. 120,531

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DWONE CASSANOVA HEARD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed November 1, 2019. Affirmed.

*Hope E. Faflick Reynolds*, of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., BUSER, J., and LAHEY, S.J.

PER CURIAM: This is an appeal by Dwone Cassanova Heard of the district court's denial of his postsentence motion to withdraw guilty pleas to aggravated assault of a law enforcement officer and possession of marijuana. Finding no reversible error, we affirm the district court's judgment denying the motion.

FACTUAL AND PROCEDURAL BACKGROUND

On September 11, 2017, Heard was charged with possession of marijuana with intent to distribute in violation of K.S.A. 2017 Supp. 21-5705(a)(4), (d)(5), possession of

1

drug paraphernalia with intent to distribute a controlled substance for sale in violation of K.S.A. 2017 Supp. 21-5709(b)(1), (e)(2)(A), and possession of drug paraphernalia in violation of K.S.A. 2017 Supp. 21-5709(b)(2), (e)(3). During plea negotiations before the preliminary hearing, Heard informed his counsel, Shannon Crane, that he did not want to plead guilty to a felony drug charge but he was willing to plead guilty to any other felony. Ultimately, the State agreed to allow Heard to plead guilty to aggravated assault of a law enforcement officer under K.S.A. 2017 Supp. 21-5412(d)(1), and possession of marijuana with one prior offense under K.S.A. 2017 Supp. 21-5706(b)(3), (c)(2)(A).

Prior to sentencing, Heard filed a motion to withdraw his pleas. In the motion, Heard asserted that Crane and the prosecutor mistakenly believed the aggravated assault of a law enforcement officer was a severity level 7 crime, but later learned it was, in fact, a severity level 6 crime. Heard argued that this error increased his criminal history score and his presumptive prison sentencing range by 10 months.

At sentencing on March 16, 2018, Heard withdrew his motion to withdraw pleas because he wanted to begin serving his sentences. The district court granted Heard's motion for a dispositional departure and sentenced him to a controlling sentence of 39 months' probation with community corrections and an underlying 24-month prison term. Three months after sentencing, on June 29, 2018, the district court revoked Heard's probation and imposed the prison sentences after he committed multiple violations of his probation.

Two months later, on August 3, 2018, Heard filed a pro se motion to withdraw his pleas. In the motion, Heard alleged:  (1) his defense counsel was not interested in contesting his case, (2) his decision to plead guilty was made under duress because Heard had a newborn baby, and (3) his defense counsel advised him to enter a plea to an offense he did not commit—aggravated assault on a law enforcement officer.

After an evidentiary hearing, the district court denied Heard's motion. In a journal entry memorializing the basis for the ruling, the district court found that unlike Heard's testimony, Crane's testimony regarding the plea negotiations and entry of the guilty pleas was credible. The district court found that Crane's performance as counsel was not deficient because she provided proper legal advice and it was against that advice Heard decided to plead guilty to the charge of aggravated assault of a law enforcement officer. In particular, the district court found that Heard was insistent on accepting the plea bargain, and the terms were favorable towards him. The district court concluded that "[t]he Defendant received what he bargained for, proceeding against advice of counsel."

Heard filed a timely notice of appeal.

DENIAL OF THE POSTSENTENCE MOTION TO WITHDRAW PLEAS

We begin our analysis with a brief summary of our standard of review and the pertinent Kansas law relating to a postsentence motion to withdraw pleas. "To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." K.S.A. 2018 Supp. 22-3210(d)(2). Factors a court generally considers in determining whether a defendant has shown the manifest injustice necessary to withdraw a plea after sentencing mirror those considered when reviewing a presentence motion to withdraw a plea for good cause. *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018).

To determine whether a defendant knowingly and voluntarily entered a plea, courts look to the following factors: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. 307 Kan. at 443. Generally, an appellate court will not disturb a district court's

3

denial of a postsentence motion to withdraw plea absent an abuse of discretion. 307 Kan. at 443.

Preliminarily, although Heard's motion in the district court claimed manifest injustice due to ineffective assistance of counsel, Heard does not raise or brief that issue on appeal. Consequently, that issue is not before our court. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (Issues not adequately briefed are deemed waived or abandoned.).

Moreover, on appeal, although Heard contends he was under duress at the time he entered his guilty pleas, he seeks relief because his pleas were not fairly and understandingly made. He supports this claim by asserting that he only entered his guilty pleas in order to be released from jail so that he could see his newborn child. Heard argues that his concern for the well-being of his child clouded his judgment and "caused a sense of desperation to interfere with his decision making." For legal support, Heard cites to analogous caselaw which recognizes that the State's threat of harm to a child or to separate the defendant from one's child may render an incriminating statement involuntary and inadmissible at trial.

Although Heard is correct that such threats may invalidate a plea, a plea will not be invalidated if the defendant's decision to plead was based on self-coercion. As our Supreme Court has determined: "Every man charged with crime is influenced by personal considerations which may later not appear valid to him, but psychological self-coercion is not the coercion necessary in law to destroy an otherwise voluntary plea of guilty." *Williams v. State*, 197 Kan. 708, 711, 421 P.2d 194 (1966); see also *State v. Denmark-Wagner*, 292 Kan. 870, 876-77, 258 P.3d 960 (2011) (the defendant argued he was coerced into pleading guilty purely because his mother and sister wanted to be able to see him sooner and hug him during visitation); *Wippel v. State*, 203 Kan. 207, 209, 453

4

P.2d 43 (1969) (the defendant entered a guilty plea with the understanding that he would serve such a short sentence that his children would not be placed in foster homes).

Our court has addressed a similar situation in *State v. Bloom*, No. 98,492, 2008 WL 4291546 (Kan. App. 2008) (unpublished opinion). In *Bloom*, the defendant argued her plea was involuntarily made because it was induced by fear. In particular, the defendant received information about child in need of care proceedings while her criminal case was pending that indicated her children may be placed for adoption if she and her husband were sent to prison. As our court summarized the claim: The defendant's "fear of her children being adopted influenced her to enter into a plea agreement with the State; she wanted to get out of jail and get custody of her children. Bloom also believed that if she cooperated with law enforcement, the State would return her children to her." 2008 WL 4291546, at *3.

Our court observed that "'mistaken subjective impressions, in the absence of substantial objective proof showing that they were reasonably justified, do not provide sufficient grounds upon which to vacate a guilty plea.'" 2008 WL 4291546, at *4. We found that the defendant received appropriate legal representation before entering the plea and there was no indication the State used her children as a bargaining chip during the plea negotiations. In particular, the State never told the defendant that she must plead guilty or risk losing custody of her children. In fact, during the plea hearing, the defendant acknowledged that she had not been threatened or promised anything in exchange for entering the plea. As a result, our court found the defendant failed to show good cause to withdraw her plea. 2008 WL 4291546, at *5.

Heard testified at the motion hearing that he principally entered his guilty pleas because he had post-traumatic stress disorder stemming from his newborn child being taken away from him during the proceedings, and he was concerned for the child's safety. Of note, however, the district court specifically found that Heard's testimony was not

5

credible. Moreover, there was no evidence presented that Heard had been diagnosed with post-traumatic stress disorder, and there was no mention of concerns about his child during the plea negotiations or the plea hearing.

Similar to *Bloom*, Heard failed to present credible evidence that his pleas were induced by promises or threats of the State taking custody of his child. Neither the State nor Crane used the child as a bargaining chip. Nor does it appear that Heard's child was in danger of being taken into custody by the State. On the contrary, it appears the child was safely in the mother's custody. In short, Heard's decision to enter his guilty pleas was not motivated by his concern that the child would not be cared for or that he would lose parental custody. While the State acknowledges that during plea negotiations Heard stated he wanted to see his child, his desire to plead guilty, obtain probation, and be reunited with his child, if true, was a matter of self-coercion based on purely personal considerations.

Also similar to *Bloom*, as found by the district court, Heard was represented by a competent attorney who counseled him during plea negotiations. Crane advised Heard that if he did not accept the plea agreement he could face an additional six months in jail awaiting trial. However, Crane testified that she never informed Heard that he must plead guilty, only that he must weigh his options of the plea offer compared to any potential witness testimony offered against him in the event of trial.

Heard's statements made during the plea hearing further indicate that his pleas were knowing, voluntary, and not coerced. Heard acknowledged that he understood the charges and the possible penalties he faced. He waived his right to have charges formally read to him. Heard stated he understood his jury trial rights and was satisfied with Crane's legal representation. Heard did not have any complaints or questions before the district judge asked him to enter the pleas. In short, in addition to the evidence presented at the motion hearing, the transcript of the plea colloquy persuades us that Heard knowingly

6

and voluntarily understood the plea agreement and the decision to plead guilty was made of Heard's own accord. Finally, Heard had an opportunity to withdraw the pleas before sentencing but declined to do so. He only sought to withdraw the pleas after his probation was revoked.

On this record, we hold that the district court did not abuse its discretion in denying Heard's motion to withdraw his guilty pleas. We find the defendant was represented by competent counsel, he was not misled, coerced, mistreated, or unfairly taken advantage of, and his pleas were fairly and understandingly made. See *Johnson*, 307 Kan. at 443.

Affirmed.