NOT DESIGNATED FOR PUBLICATION

No. 123,266

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

HORACIO PADILLA-LOZA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Clark District Court; SIDNEY R. THOMAS, judge. Opinion filed January 21, 2022. Affirmed.

*Terry J. Malone*, of Williams-Malone, P.A., of Dodge City, for appellant.

*Joseph H. Milavec*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., ATCHESON and WARNER, JJ.

PER CURIAM: As part of an agreement resolving felony and misdemeanor drug charges against Defendant Horacio Padilla-Loza, the State joined in recommending a personal recognizance bond for him in exchange for his no-contest plea to the felony. The Clark County District Court accepted the plea, found Padilla guilty, and granted the bond request, allowing Padilla to get out of jail. After changing lawyers, Padilla filed a motion to withdraw his plea on the grounds the State's agreement to the bond modification amounted to an impermissibly coercive inducement, rendering the plea improper. The district court denied the motion. Padilla has appealed that ruling.

1

In the run of cases, the State's willingness to support a requested bond modification as part of a plea agreement is not unduly coercive nor does it otherwise impermissibly take advantage of a defendant. This is such a case. Moreover, Padilla's shifting positions in requesting and receiving the modified bond and later trying to leverage that change to withdraw his plea entails a litigation tactic precluded by the judicial estoppel doctrine. We affirm the district court's denial of Padilla's motion to withdraw his plea, thereby preserving the conviction and resulting sentence.

FACTUAL AND PROCEDURAL HISTORY

The relevant facts are limited and undisputed. In November 2019, a law enforcement officer stopped Padilla for failing to properly signal when merging as he was driving through Minneola. The officer and Padilla played out something close to a textbook drug interdiction traffic stop, the details of which are irrelevant to the appeal. Padilla, a Mexican national, had a Pennsylvania driver's license and was driving a vehicle with Pennsylvania plates. He told the officer he was in the midst of a marital breakup and was moving from Pennsylvania to California. A search of the vehicle uncovered about 2 ounces of methamphetamine, some of which appeared to be packaged for distribution, and a glass pipe of the sort commonly used with illegal drugs.

The State charged Padilla with possession of methamphetamine, a felony, and with possession of drug paraphernalia, a misdemeanor. His bond was set at $10,000—an amount he was unable to post. Padilla's appointed lawyer filed a motion for a bond modification that a magistrate judge denied on the grounds Padilla had no ties to the community and presented a substantial flight risk.

The lawyer then negotiated an agreement with the State calling for Padilla to plead no contest to the possession of methamphetamine charge with a joint recommendation for a guidelines sentence that everyone anticipated would presumptively call for probation.

In addition, the State agreed to drop the misdemeanor charge and to join in a request that Padilla be given an own recognizance or OR bond allowing him to immediately get out of jail in advance of sentencing.

At the plea hearing, Padilla told the district court he understood and approved of the deal his lawyer had worked out with the State. He was informed of the possible penalties he faced and the rights he was giving up by entering a plea. Upon the State's evidentiary proffer, the district court accepted Padilla's no-contest plea and adjudged him guilty of possession of methamphetamine. The district court then modified the bond in conformity with the parties' recommendation. Padilla was released from jail on an OR bond.

Before sentencing, Padilla hired a replacement for his court-appointed lawyer. The new lawyer filed a motion to withdraw Padilla's no-contest plea under K.S.A. 2020 Supp. 22-3210(d)(1). Testifying in support of the motion, Padilla told the district court he was generally satisfied with his first lawyer and understood the proceedings in his case. But he indicated he was unaware that he could seek a bond modification without entering a plea, although his first lawyer had attempted to do so. Padilla testified that he took the plea deal principally to get out of jail because he could not post bond. At the July 2020 hearing, Padilla's new lawyer suggested it was improper for the State to include a recommendation for a bond reduction as part of a plea deal and Padilla, therefore, should be allowed to withdraw his plea. The district court denied the motion and later proceeded to sentence Padilla in accordance with the plea agreement. The district court placed Padilla on probation for 12 months with an underlying sentence of 11 months in prison and 12 months on postrelease supervision. Padilla has appealed.

For his only issue on appeal, Padilla contends the district court erred in denying the motion to withdraw his plea to the methamphetamine charge. Padilla essentially reprises his argument to the district court: An offer by the State to join in a bond modification that would allow a defendant to get out of jail impermissibly taints a plea agreement and renders it unduly coercive.

*No Abuse of Judicial Discretion in Denying Padilla's Motion*

A defendant has a statutory right to withdraw a plea before sentencing for "good cause" and in the district court's "discretion." K.S.A. 2020 Supp. 22-3210(d)(1). District courts are to look at three primary factors to determine if a defendant has shown good cause to withdraw a plea: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Garcia*, 295 Kan. 53, 62-63, 283 P.3d 165 (2012) (noting that these considerations—commonly known as the *Edgar* factors—establish a sound benchmark); *State v. Williams*, 290 Kan. 1050, 1053, 236 P.3d 512 (2010); *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). All three factors need not favor the defendant to permit relief from a plea, and the district court should consider other relevant circumstances based on the facts of the particular case. See *Garcia*, 295 Kan. at 63 (district court not confined to *Edgar* factors); *Williams*, 290 Kan. at 1054 (all of the *Edgar* factors need not favor defendant; court may consider other circumstances); *State v. Aguilar*, 290 Kan. 506, 512-13, 231 P.3d 563 (2010).

Because the governing statute expressly affords the district court discretion in ruling on a defendant's motion to withdraw a plea before sentencing, an appellate court reviews the determination for abuse of discretion. *State v. White*, 289 Kan. 279, 284,  211

4

P.3d 805 (2009). A district court exceeds that discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *State v. Darrah*, 309 Kan. 1222, 1227, 442 P.3d 1049 (2019); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

On appeal, Padilla does not directly incorporate the *Edgar* factors into his argument that a recommendation for a bond modification necessarily taints a plea agreement. But the pitch more or less implicates the second factor bearing on whether the defendant has been high-pressured, bamboozled, or otherwise treated unfairly in the plea process. Here, the evidence is otherwise, as Padilla outlined in his testimony. He understood the plea arrangement and entered into it because it conferred benefits on him, including the likelihood he could get out of jail. The very nature of plea bargaining entails a mutual exchange of perceived benefits. The State avoids the uncertainty of a trial and conserves prosecutorial time and resources for other endeavors because a defendant agrees to plead. A defendant eliminates the same uncertainty and typically receives a reduction in charges, a favorable sentencing recommendation, or both. See *State v. Pollman*, 56 Kan. App. 2d 1015, 1042-43, 441 P.3d 511 (Atcheson, J., dissenting), *rev. granted* 310 Kan. 1069 (2019), *dismissed as moot* March 23, 2021.

By their nature, plea agreements, then, tend to open avenues for lessening the loss of liberty defendants face if convicted as initially charged. The State's offer to join in a recommendation for a bond modification in exchange for a defendant's plea—permitting presentencing release from custody—is, thus, of a kind with the other inducement commonly included in plea bargains. As a policy matter, such bond modifications also have a certain sensibility for many defendants who have committed nonviolent crimes and likely will receive sentences presumptively calling for probation under the sentencing guidelines.

We, therefore, do not see some inherent unfairness or undue coercion in the State's offer to recommend an OR bond for Padilla upon his no-contest plea to the felony drug charge. This court has found those recommendations do not furnish "good cause" for defendants to later withdraw their pleas. See *State v. Croft*, No. 118,856, 2018 WL 5730134, at *2 (Kan. App. 2018) (unpublished opinion); *State v. Walker*, No. 117,909, 2018 WL 3077089, at *3 (Kan. App. 2018) (unpublished opinion); *State v. Thomas*, No. 110,681, 2015 WL 326458, at *6 (Kan. App. 2015) (unpublished opinion). In those cases, the defendants argued that significant family circumstances, such as the poor health or recent death of a close relative, factored heavily into their decisions to plead in exchange for a recommended bond modification. But those kinds of external pressures do not render pleas unfair or impermissibly coercive. See *State v. Denmark-Wagner*, 292 Kan. 870, 877, 258 P.3d 960 (2011). Here, Padilla labored under no similar emotional weights when he decided to accept the plea agreement. In short, a desire to get out of jail as soon as possible is not a legally valid basis to withdraw an otherwise knowing and informed plea.

Padilla tries to bolster his argument by suggesting some anomaly in the magistrate judge's denial of bond modification at the start of the case and the district court's decision to grant the same modification after he entered his plea. He says the circumstances were comparable and the shift reflects an untoward inconsistency on the State's part and a certain arbitrariness in judicial decision-making. But the premise is faulty in at least two ways.

First, with the plea agreement in place, Padilla knew the State would support a guidelines sentence on the felony. And everyone anticipated Padilla would be a candidate for presumptive probation under the guidelines. So after his plea, Padilla would have had considerable confidence the district court would not send him to prison. And he would have known that absconding then could prompt the district court to look askance at probation. That dispositional framework was not in place at the start of the case, when his

first lawyer presented the initial motion for bond modification. As a result, Padilla realistically could have been viewed as a substantially greater flight risk then.

More importantly, however, the State is materially less disadvantaged if a defendant absconds after entering a plea and being adjudged guilty than before. A defendant who flees while on bond before trial cannot then be tried in absentia. The State may request a fugitive warrant for the defendant's arrest. But he or she might evade capture for months or years. In the meantime, the State's case against the defendant may deteriorate if witnesses are no longer available or their memories dull with the passage of time. That degradation of evidence typically falls disproportionately on the State since it bears the burden of proving a defendant guilty beyond a reasonable doubt. So holes in the evidence resulting from the passage of time may foster reasonable doubts that didn't originally exist.

But after a defendant pleads and is adjudged guilty, the State no longer must marshal evidence at a trial to convict. If a defendant then absconds, he or she may enjoy an extended period of undeserved freedom. But upon capture, the defendant (and the State) would face the district court for sentencing rather than a jury for a trial—a position that carries comparatively little risk for the State. Here, the potential adverse consequences for the State were far fewer if Padilla fled after entering a plea. The State's calculus in joining with Padilla in a request for a bond modification as part of a plea deal was quite different than it would have been earlier in the case. For the district court, the adverse effects of Padilla absconding after pleading were also considerably curtailed, even if the risk itself may have been roughly the same. As we have explained, however, Padilla had less incentive to flee following a plea that substantially solidified the likelihood he would be placed on probation at sentencing.

In sum, we find the reasoning and result in our court's earlier opinions considering this issue to be sound. We conclude the State's joint recommendation for a bond

7

reduction in conjunction with Padilla's plea did not create good cause for him to later withdraw that plea. The district court neither misunderstood the facts nor misapplied the law in denying the motion. Other district courts would have done likewise under the circumstances. There was no abuse of judicial discretion.

*Judicial Estoppel Precludes Padilla's Motion to Withdraw Plea*

Because Padilla joined in the request to the district court for a bond reduction and received the requested modification as part of the plea agreement, he could not later disavow that decision as legal error to justify the motion to withdraw his plea. The flip-flopping tactic runs afoul of the judicial estoppel doctrine. Judicial estoppel precludes a party from taking a legal position to obtain an advantage or benefit in one phase of a case and then taking a contradictory position in a later phase of the case to gain further advantage or benefit. *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001); *State v. Hargrove*, 48 Kan. App. 2d 522, 548-59, 293 P.3d 787 (2013). The United States Supreme Court encapsulated the doctrine this way: "'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" *New Hampshire*, 532 U.S. at 749 (quoting *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S. Ct. 555, 39 L. Ed. 578 [1895]). The purpose is "to discourage unfair manipulation for tactical advantage and to minimize any effects when it happens." *Hargrove*, 48 Kan. App. 2d at 549.

The circumstances here depict a near paradigm for invoking judicial estoppel. Represented by a lawyer, Padilla entered into a plea agreement with the State that included a joint recommendation for a bond modification that would secure his release from jail before sentencing. Throughout these proceedings, Padilla has acknowledged he understood the particulars of the plea deal, including the bond modification. At the time

8

the modification was presented to the district court during the plea hearing, neither Padilla nor his lawyer suggested there was something legally amiss or untoward about it (perhaps because there wasn't). Padilla secured the benefit of the bond modification and, in turn, his immediate release from jail—a substantial benefit.

Later, through his new lawyer, Padilla assailed the very bond modification he asked for and received as being so pernicious as to warrant the withdraw of his no-contest plea. Ironically, of course, Padilla was free because of the bond modification when he argued that the district court never should have considered it as part of the plea deal. Padilla had accepted the manifest benefit without objection until it no longer fit a revised strategic approach to the case and only then argued it was improper. The judicial process does not countenance that sort of about-face. Padilla's switch in lawyers does not amount to an escape hatch from judicial estoppel. Here, judicial estoppel alone provides a sufficient basis to reject Padilla's appeal.

Affirmed.