NOT DESIGNATED FOR PUBLICATION

No. 124,694

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRADLEE MARSHAL ROSS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; KENDRA LEWISON, judge. Opinion filed February 3, 2023. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*David Lowden*, deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ISHERWOOD, P.J., ATCHESON, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: Bradlee Marshal Ross appeals the district court's denial of his presentence motion to withdraw plea. Ross pleaded guilty to one count of robbery and was released on bond supervision until sentencing. He failed to report to Riley County Court Services, however, so a warrant was issued for his arrest. A few days later, he was arrested for a separate Geary County probation violation warrant. Ross moved to withdraw his plea on the robbery charge because it resulted from coercion. He argued that the State knew he was eager to be released so he could spend time with his sick mother and newborn child. Ross claimed he never would have pleaded guilty if he knew

1

that his arrest on a separate warrant was imminent. The district court denied the motion, finding that Ross was not coerced into entering the plea. On appeal, Ross argues that the evidence fails to support the district court's conclusion that Ross' plea was not the product of coercion. A fair review of the record reveals that Ross freely and voluntarily entered the plea, with full knowledge of the consequences if he failed to report to Court Services, and that it carried the potential to trigger revocation of his Geary County probation. The district court properly exercised its discretion when it concluded there was no evidence that Ross was coerced into entering the plea and no good cause existed to justify withdrawal of the same.

FACTUAL AND PROCEDURAL BACKGROUND

The State charged Ross with aggravated robbery, aggravated intimidation of a witness, aggravated assault, and criminal threat. He opted to plead guilty to one count of robbery, and the parties agreed to recommend open sentencing. The State would request a prison disposition to run consecutive to any other case, and Ross retained the right to seek a modified bond while awaiting sentencing so that he could spend time with his sick mother. The State agreed not to oppose the request. Ross also acknowledged in the plea agreement, and agreed to acknowledge on the record, that he was "pleading guilty because he [was] guilty of committing a robbery and [that] he [was] not pleading guilty simply to get out of jail." Ross signed the agreement, which bears some indication he understood and voluntarily accepted the plea agreement.

In a separate waiver of rights form, Ross further acknowledged that his attorney spent sufficient time answering his questions about his case and his rights, that he understood the court could impose the maximum prison sentence of 136 months, and that the State would not be bound by the agreement if Ross committed a new crime or otherwise violated his release conditions before sentencing. Finally, Ross affirmed that he

2

freely entered his guilty plea "under no threat, intimidation, or coercion, and no promises [had] been made to [him]" by his attorney, the prosecutor, or any police officer.

At the plea hearing, Ross verified that he reviewed the terms of the agreement, understood it, and thoroughly discussed it with his attorney before signing it. He stated that he was freely, voluntarily, and willfully entering a guilty plea after fully discussing the case with his attorney, and nobody made any promises or inducements, other than what was set out in the agreement itself, in exchange for pleading guilty. Ross then provided the factual basis for his robbery conviction. The district court found that Ross understood the nature of the charges against him, appreciated the consequences of pleading guilty, understood the constitutional rights being waived, and understood the factual basis for the plea. The district court accepted Ross' guilty plea and adjudged him guilty of robbery.

Ross then requested that the district court order an own recognizance (O/R) bond so that he could visit his sick mother and newborn child while awaiting sentencing. He assured the court he would remain in Topeka with the mother of his two children. Ross' counsel stated:

> "I've certainly discussed with Mr. Ross the fact that if he were to mess up in any fashion, either not making sentencing, or having a new offense, or essentially if he doesn't walk the line on the complete straight and narrow, that would be absolutely disastrous to our chances on July 21st [at sentencing] and I think he understands that."

The district court granted Ross' request for an O/R bond and placed him on bond supervision with court services. It ordered him to contact court services once he was released and emphasized that the failure to comply with his bond conditions would result in severe consequences at sentencing. At the end of the hearing, the court services officer notified the district court that Ross also had a pending warrant for a probation violation in

Shawnee County, and Ross explained that he needed to report to his probation officer in that case.

A day later the district court issued a warrant for Ross' arrest as a result of his failure to timely report to court services. Ross was arrested a few days later but it was for a new, separate incident in Shawnee County and for a probation violation warrant from Geary County, which was issued after Ross entered his guilty plea. He was also eventually arrested on the Riley County warrant.

Ross filed a motion to reinstate his bond and to withdraw his plea, and his counsel moved to withdraw from the case. Ross' newly appointed counsel filed an amended motion to withdraw plea. He alleged that Ross' guilty plea was coerced because the State essentially offered him three unfavorable plea options a mere two days before trial was to begin. According to Ross, the State threatened to refile the case resulting in further pretrial confinement, so he pleaded guilty in order to have a chance to spend time with his sick mother and children before sentencing, but then he was arrested on another warrant shortly after being released.

At the hearing on Ross' motion to withdraw plea, his prior defense counsel, Cole Hawver, testified that the prosecutor offered Ross three plea options: (1) He could plead guilty to one count of a severity level 5 robbery with open sentencing and presentencing release, (2) he could plead guilty to multiple charges with a maximum 54-month prison sentence, or (3) the State would dismiss the case and refile it. According to Hawver, Ross chose the first option not only because he wanted to be released from jail to see his mother and child, but he also wanted to obtain employment as a way to demonstrate for the sentencing court that he was amenable to probation. Hawver testified that receipt of an O/R bond before sentencing was the central part of the plea negotiations and that Ross freely and voluntarily entered his guilty plea. He assured the court he did not coerce Ross into pleading guilty. Hawver acknowledged that he and Ross were aware of the pending

4

Shawnee County probation violation warrant and the possibility that Ross' probation could be revoked in Geary County as a result of his plea in this case.

Ross testified that he feared if he did not choose a plea option, he would spend an even greater period in pretrial confinement while the State dismissed and refiled the case. He informed the court that presentencing release was the primary consideration in his decision so that he could visit his sick mother and newborn child. Thus, he believed that the State abused that information to coerce him into entering a plea. According to Ross, the State was aware of the potential probation violations, but he was unaware of any outstanding warrants that might impinge upon his release until later. If he had such knowledge, he would not have entered the plea.

Ross also testified that he did not report to court services because he misplaced the phone number and then, once he located it, he could not navigate the automated system. He did not attempt to contact them again. But Ross pointed out that he did contact the probation officer supervising his Geary County case once he was released and it was then that he learned he possibly had a warrant in Geary County, but he did not know whether he would be arrested on it. Ross acknowledged he was ticketed a few days after his release for criminal damage to property after breaking his girlfriend's phone. He was also arrested that day on the Geary County warrant that was filed the day after he was released.

The State recalled Hawver to the stand, and Hawver questioned how quickly the Geary County warrant manifested after Ross pleaded guilty because such warrants are usually not filed until after sentencing. He found it peculiar that Ross was arrested right after being released on the O/R bond he bargained for. Hawver agreed that if the State contacted Geary County beforehand and knew Ross would be arrested on the Geary County warrant, it would reveal the State did not negotiate in good faith, but he had no proof such contact occurred.

Kevin Murray, the chief court services officer for Riley County, testified that he attended the plea hearing and learned that Ross needed to bond out of a Shawnee County case and would also be on bond supervision in Riley County. He contacted Shawnee County Court Services and discovered that Shawnee County was supervising Ross' Geary County case but had not yet notified Geary County about Ross' Riley County case. Murray then contacted a Geary County Court Services officer, who was previously unaware of Ross' Riley County case and, upon learning of it, intended to move to revoke his probation. Murray clarified that the State did not direct him to contact Geary County and confirmed that Ross never contacted the Riley County Court Services office. He explained that the court services' phone system allows callers the option to speak directly to someone or leave a voicemail with officers or a receptionist. After consulting the prosecutor, Murray issued an arrest warrant for Ross' failure to contact Riley County Court Services.

The prosecutor assigned to the case testified that Ross first approached him in December 2020 about negotiating a plea agreement, but the State wanted to first examine Ross' criminal history. Initially, there was no discussion about an O/R bond, but a few months later, Ross expressed his willingness to enter a plea if he could get an O/R bond. The prosecutor declined Ross' request for an O/R bond but would consider a furlough to allow Ross to see his sick mother. Ross did not accept the furlough offer, and both parties agreed to proceed with trial. Yet there was uncertainty about whether a venue would be available for trial and whether the victim, the primary witness, could attend trial from out of state on short notice. The State filed a motion for a continuance, which the district court denied, so the State offered Ross the three plea options. Ross orally accepted the option providing for an O/R bond, but the prosecutor kept preparing for trial in case the plea never came to fruition.

The prosecutor testified that he was unaware of Ross' Geary County probation violation warrant and denied having any contact with Geary County Court Services. He

claimed that he did not know Ross had bonded out until Riley County Court Services contacted him about Ross' failure to report. The prosecutor told Riley County Court Services not to issue the warrant until the end of the day so that Hawver could have a chance to contact Ross. The prosecutor claimed that he first learned about the warrants when Ross was arrested.

After considering the evidence presented and hearing arguments from both sides, the district court found no good cause to justify withdrawal of Ross' plea. Turning to the *Edgar* factors, it determined there was no issue concerning the competency of counsel under the first factor, and whether the plea was fairly and understandingly made was irrelevant here. Thus, the main issue was whether Ross was misled, coerced, mistreated, or unfairly taken advantage of under the second factor. The district court highlighted that Ross received the plea deal that he wanted the entire time—it allowed him an O/R bond, it cut his maximum sentence from 20 years to 10 years, and it offered him a chance to request probation.

The district court declined to find any coercion existed where Ross essentially faced three unfavorable options and no guarantee he would receive probation. It noted that Ross only argued the agreement was coercive "when he stopped getting the benefit of the O/R bond that he had fought so hard to get." The court also found there was no evidence the State participated in the issuance of the Geary County warrant. Ultimately, the district court determined that Ross was not mislead, coerced, mistreated, or unfairly taken advantage of when he entered his guilty plea and denied his motion.

The case proceeded to sentencing at which time the district court denied Ross' departure motion and imposed a 130-month prison sentence.

Ross timely brings the matter before us to analyze the district court's denial of his presentence motion to withdraw plea.

7

*The district court properly exercised its discretion when it found good cause did not exist to grant Ross' presentence motion to withdraw plea.*

Ross argues that the district court abused its discretion by denying his motion to withdraw plea because the State's threats to dismiss and refile the case, and the extended confinement that would result from that action, coerced Ross into accepting a plea agreement. The State asserts that Ross received the plea deal he requested and there was no credible evidence to support a finding of coercion.

An appellate court reviews a district court's denial of a presentence motion to withdraw plea under an abuse of discretion standard. A district court abuses its discretion when its decision is based on an error of fact or law or if no reasonable person would agree with the decision. The party seeking to withdraw the plea bears the burden of proving that the district court abused its discretion in denying the motion. We do not reweigh evidence or assess witness credibility when analyzing issues under this standard. *State v. Woodring*, 309 Kan. 379, 380, 435 P.3d 54 (2019).

The district court may allow a guilty plea to be withdrawn for good cause at any time before a sentence is adjudged. K.S.A. 2021 Supp. 22-3210(d)(1). In determining whether a defendant has established good cause to withdraw his or her plea before sentencing, the district court should consider three factors: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). These factors, however, are not exhaustive. See *State v. Aguilar*, 290 Kan. 506, 512-13, 231 P.3d 563 (2010).

Ross' claim is grounded in the second of these factors as he contends the State secured his guilty plea by threatening to dismiss and refile the case against him. Ross asserts the threat amounted to coercion because that act would extend his pretrial confinement and the State was aware Ross wanted to be released to visit his sick mother and newborn child. He also maintains that the State's promise that he would be released on bond supervision for six to eight weeks was illusory because he was immediately arrested on the Geary County warrant following his release. Ross claims he would have never pleaded guilty if he knew another county would issue an arrest warrant the next day.

We are not persuaded that Ross' guilty plea stemmed from coercion. His personal reasons for entering the plea—his desire to be released so that he could see his sick mother and newborn child and his fear that refiling the case would prolong his pretrial confinement—are insufficient to establish coercion that justifies withdrawing his plea. See *Williams v. State*, 197 Kan. 708, 711, 421 P.2d 194 (1966) (psychological self-coercion, such as family pressure, is not the type of coercion that can destroy an otherwise voluntary plea.). Similarly, in *Wippel v. State*, 203 Kan. 207, 209, 453 P.2d 43 (1969), the Kansas Supreme Court held that Wippel's personal consideration for pleading guilty to a shorter sentence so that his children would not be placed in foster care was not sufficient coercion to withdraw his plea. More recently, in *State v. Denmark-Wagner*, 292 Kan. 870, 876-77, 258 P.3d 960 (2011), the Kansas Supreme Court held that pressure from family members to enter a plea so that they could see Denmark-Wagner during visitation did not establish coercion when record contained admission that the decision to enter a plea was ultimately his decision.

The district court found that Ross received the plea deal that he requested from the State, and it was not coercive because Ross voluntarily entered the plea. It also concluded there was no evidence that the prosecutor was responsible for issuing the Geary County warrant, and that Ross' failure to report to court services was the reason for his Riley

9

County warrant. Those factual findings are supported by substantial competent evidence, the testimony from the prosecutor that he did not learn about Ross' Geary County probation violation until after he was arrested. The district court also agreed to grant Ross' request for an O/R bond, but it placed extra conditions and emphasized that Ross would face severe consequences if he failed to follow them. Ross did not report to Riley County Court Services, which violated the conditions of the O/R bond he negotiated.

Ross freely and voluntarily agreed to plead guilty so that he could be released on bond to visit his ailing mother and infant child. He assured the court through the agreement and his statements at the plea hearing that his decision to enter a plea was not the product of coercion or inducement from external promises. Ross knew that he needed to report to court services when he began serving his O/R bond. Hawver testified that Ross also knew that his probation could be revoked in Geary County by entering the plea. The district court's decision to deny Ross' motion to withdraw his plea did not constitute an error of fact or law, nor was it unreasonable.

Affirmed.