NOT DESIGNATED FOR PUBLICATION

Nos. 119,939
120,439

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ACE GONZALES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TERRY L. PULLMAN, judge. Opinion filed November 1, 2019. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and BUSER, JJ.

PER CURIAM:  The State charged Ace Gonzales in two separate criminal cases in 2017. In the first case, Gonzales retained Steven Mank as counsel. In the second case, Taryn Locke was appointed to represent him. The first case was slated for trial on November 27, 2017. That morning, Gonzales told the trial court judge he wanted to proceed pro se and negotiate a plea agreement with the State. The trial court judge allowed him to do so. Gonzales and the State reached a plea agreement resolving both pending cases. The trial court held a plea hearing. It called Locke to the courthouse

1

because the plea agreement resolved her case as well as the first case. The trial court then appointed Locke to represent Gonzales in the first case as well as the second. Gonzales pleaded guilty to three charges. Before sentencing, Gonzales moved to withdraw his plea, citing ineffective assistance of counsel and arguing his plea was the result of PTSD and anxiety. After a hearing, the trial court denied this motion. Gonzales now appeals this ruling. For the reasons stated below, we affirm.

On May 17, 2017, in case No. 17 CR 1416, the State charged Gonzales with a domestic violence offense: knowingly causing bodily harm in a manner whereby great bodily harm, disfigurement, or death could be inflicted. Gonzales retained Steven Mank to represent him in this case. The trial court set 17 CR 1416 for trial on November 27, 2017.

On June 23, 2017 in case No. 17 CR 1844, the State charged Gonzales with two more domestic violence offenses: knowingly causing great bodily harm or disfigurement and knowingly violating a no-contact order. Both this case and 17 CR 1416 involve the same victim. Taryn Locke was appointed to represent Gonzales in this case.

The trial court held a preliminary hearing for 17 CR 1844 on October 5, 2017. At the hearing, Gonzales told the court he wanted to proceed pro se and have Locke removed. The court cautioned Gonzales about the risks of proceeding without a lawyer, and Gonzales confirmed that he chose nevertheless to proceed pro se "with a full understanding of what the consequences are." Gonzales stated he understood that if he later decided he needed an attorney, Locke would most likely be reappointed; he also said that his decision to proceed pro se had "nothing personally to do with Ms. Locke." The court told Gonzales that his sentence for the primary offense could range from 38 months to 172 months and was a presumptive prison sentence; Gonzales stated that he understood. The court excused Locke from the case. Gonzales presented no evidence at

2

the preliminary hearing and waived the reading of the complaint. Gonzales pleaded not guilty on both counts. The court set the case for trial on November 6, 2017.

Shortly after the preliminary hearing, Gonzales moved for reappointment of counsel in 17 CR 1844. The trial court held a hearing on the motion on October 20, 2017. The trial court reappointed the public defender's office. The court then continued the trial in that case until December 4, 2017; Gonzales did not object.

On October 31, 2017, Gonzales moved pro se to remove Locke as counsel. He alleged that Locke "was handling case [*sic*] in a [*sic*] unfavorable way" because he disagreed with her on case strategy and she would not file particular motions he wanted. He also alleged that "it would surly [*sic*] appear Ms. Locke had discuss" his case with law enforcement and prosecution before she met with him, and she was therefore biased. He further alleged that he had a "conflict of interest" with "any member of the public defenders office." The trial court scheduled a hearing on this motion for November 11, 2017, then later rescheduled it for December 1, 2017.

The morning of November 27, 2017, the day of Gonzales' scheduled trial in 17 CR 1416, the trial court held a pretrial meeting in chambers with Gonzales, Mank, and Assistant District Attorney Alice Osburn. The purpose of the meeting was to review jury questionnaires for potential conflicts. During the meeting, Gonzales "started into a colloquy with the Court, and to lesser extent Mr. Mank, about some issues he had had with Mr. Mank." The trial judge then had Mank and Gonzales confer privately in the library.

After the private conference, the trial court proceeded on the record to discuss the issue with Mank, Gonzales, and Osburn present. Mank reported that Gonzales wished to proceed pro se; the trial court asked Gonzales if this was true. Gonzales responded, "I feel like I don't really have an option if he's not going to do his due diligence and fully

3

represent me to the best of his ability." Gonzales then alleged that Mank "doesn't know what he's going to do" at trial. Mank clarified that he told Gonzales that the trial strategy was dependent on what the State did at trial. If the victim testified one way, he would take one approach. If the victim testified differently, he would take a different approach.

The trial judge asked if there was "any way" Gonzales could continue to work with Mank. Gonzales responded, "I would like him to because I know he's a good lawyer, but for whatever reason, he's telling me what he's telling me." The trial judge explained that oftentimes attorneys and clients disagree because attorneys are more objective when acting in the best interests of the client, while clients sometimes are unable to see the full picture. Gonzales said he understood this. The trial judge again asked if Gonzales wanted Mank to represent him at trial, or if he wanted to represent himself. Gonzales asked, "[I]f I get stuck out there, will I be able to through my Sixth constitutional right be able to call for counsel and withdraw if I get stuck out there for whatever reason?" The trial judge explained that Gonzales would have to apply for a court-appointed attorney; the judge did not know what attorneys would be available and what their schedules were, but he cautioned that he was not going to continue the case mid-trial for days or weeks to let a new attorney get up to speed, that if Gonzales asked for counsel mid-trial it would potentially result in a mistrial. Mank then offered to act as hybrid standby counsel wherein he could be "on call" for the trial if Gonzales had a question during trial. Gonzales stated that he would be okay with this.

The trial judge then cautioned Gonzales about self-representation. Gonzales stated that he understood the warnings and the rights he was giving up. The trial judge found that Gonzales knowingly and intelligently waived his right to counsel, opting to proceed pro se with Mank as standby counsel.

The trial judge and Mank began to discuss the logistics of standby counsel, as the trial judge had never before presided over a case with standby counsel. As Mank and the

4

trial judge conversed, Gonzales interrupted saying, "Just let him do it. Just let him do it. Just let him do it. If he sells me out, he sells me out. Just let him do it." The trial judge stated that he was concerned by that statement because it seemed like Gonzales was just setting Mank up for a "1507." Mank briefly responded:

"I would be happy to assist him, but as far as tactical issues, he's got it in his mind what needs to be done . . . . I will be happy to stick around or be available for issues regarding technical matters, and he can try his case the way he sees fit. Because no matter what I do, he's not going to be happy."

Gonzales replied:

"It's not true. Just do it, Mank, just do it. Just do it. 'Cause just do it. Just do the damn case. Excuse my French, just do the case. You know, just I'm just doing my best to, you know, just to make sure I don't get throwed under the bus, and it just felt like I am. And what am I supposed to do, just stand by and not say anything?"

Both the trial judge and Mank responded, "[N]o." Mank said he was happy to serve as standby but would not try the case. The court explained to Gonzales that he could proceed pro se with Mank as standby, or have the case continued so he could get a new attorney. Gonzales stated that he did not want to continue the case. He stated the following:

"No. I can't hire—I wouldn't want to continue this today. I would not want to continue this today either. He's going to represent me, or if he's saying he doesn't want to now because I was just trying to cover my own, you know, best interests and look out for myself because I couldn't get a straight answer from him, and so be it. I've walked in the waters, and if I'm just left there now because, you know, after you went over the review and I'm thinking about things, if he says that I'm not going to go in the water with you now, then I guess it is what it is."

5

Osburn interjected and stated that Locke represented Gonzales in 17 CR 1844, but he "ha[d] a motion to terminate her and go pro se on that case." Gonzales responded, "No, I just have a motion to dismiss her. I didn't have a motion to go pro se. Just a dismiss motion."

The trial judge then told Gonzales: "All right. You want an attorney, but not Mr. Mank." Gonzales replied, "No. It's either Mank or me. I don't want to deal with that. So if Mank doesn't want to do it, then I guess I've opened my mouth, and so it is what it is." He specifically declined the trial judge's offer to appoint an attorney from the conflicts office. The trial judge then asked Mank if, after this exchange, he was still willing to serve as standby counsel. While Mank was discussing this with the trial judge, Gonzales interrupted. He asked to "propose something off the record" to Osburn. The trial judge stated that he could not; he said he had not relieved Mank from the case yet. Gonzales again reiterated his complaints about Mank, then stated:

> "So if you're going to allow Mr. Mank not to represent me, then I'll just go pro se. Like I said, I opened my mouth. And at that point if you're going to let him go, then I would ask to speak with Ms. Osburn just for a short three minutes. And if me and her can't conclude on something, because I was going to do that with Mank any way, then we'll just proceed to go to trial."

The trial court then relieved Mank from the case and stated that he was giving Gonzales his "three minutes" to speak with Osburn, after which the trial judge would appoint the conflicts office. The trial judge further stated: "After conferring with the conflicts attorney, defendant can choose later whether to go to trial with counsel or pro se or enter a plea."

While acting pro se, Gonzales reached a plea agreement with Osburn: the same plea agreement the State had extended to Gonzales back in July 2017. Gonzales agreed to plead guilty to one count of level 7 aggravated battery, one count of level 5 aggravated

6

battery, and one count of violation of a protective order, resolving both his cases. In exchange, the State would recommend the low box sentences and that the sentences be run concurrent.

Because the parties came to an agreement, the trial court dismissed the jurors and held a plea hearing. Locke came to court to represent Gonzales. Locke told the trial court the following:  "[T]here is a pro se motion for dismissal of counsel that is set on the motions docket for Friday." The following discussion ensued:

"MS. LOCKE: And I have advised Mr. Gonzales that he will need to withdraw that motion in order to proceed with the plea at this time. It's my understanding that it is his desire to do that and move forward with me as counsel on the 17 CR 1844 case.

"THE COURT: All right. Thank you. Mr. Gonzales, is that correct, that you have a pending motion to relieve Ms. Locke as counsel of record and proceed pro se in the 17 CR 1844 case?

"THE DEFENDANT: Yeah. I'm going to withdraw it. Yes, sir.

"THE COURT: You have a motion pending and you do wish to withdraw it?

"THE DEFENDANT: Yes, sir.

"THE COURT: And you wish to proceed with her as your attorney today in the 17 CR 1844 case and proceed as your own attorney in the 17 CR 1416 case?

"THE DEFENDANT: Yes, sir.

"THE COURT: All right.

"(Ms. Locke talking to the defendant.)

"MS. LOCKE: Your Honor, I have just briefly spoken to him, and I think it would be best to appoint me also on the 17 CR 1416 case. Mr. Gonzales did say that that was his desire as well.

"THE COURT: Okay. You wish Ms. Locke appointed to you in the 17 CR 1416 case?

"THE DEFENDANT: Yes, sir.

"THE COURT: All right. I'll appoint Ms. Locke to represent you in this matter as well."

7

The trial court then questioned Gonzales about his plea. Gonzales stated that he "read [the plea agreement] completely" and understood and signed both his plea agreement and acknowledgment of rights and entry of plea. The trial court went over Gonzales' rights with him. Gonzales stated that he understood his rights and options. The trial court explained the highest sentences Gonzales would face under the plea agreement. Gonzales stated that no one had made any threats or promises to induce him to accept the plea agreement. The court asked Gonzales if he had a history of mental illness or mental problems that might "affect [his] abilities to understand [his] rights or the consequences of a plea." Gonzales responded, "I mean, there's stuff, but, I mean, I know what I'm doing." The trial court inquired further:

"THE DEFENDANT: I've had history, you know, mental history, like depression, anxiety, PTSD, all that stuff, but I know what I'm doing.

"THE COURT: All right. Have you received treatment or counseling or medication for those conditions in the past?

"THE DEFENDANT: I was young, yes, sir.

"THE COURT: How long has it been since you've taken any of the medications prescribed for any of those conditions?

"THE DEFENDANT: Years.

"THE COURT: And you think you've been able to function well without being on those medications, despite having those conditions?

"THE DEFENDANT: For the most part, yeah. I mean, yes, sir, I'm fine.

"THE COURT: Okay. Are you currently on any drugs or medications or at least taken any drugs or medications in the last two days that might affect your abilities to understand your rights or the consequences of a plea?

"THE DEFENDANT: No.

"THE COURT: Ms. Locke, do you have any reservations about your ability—your client's mental acuity at this time to appreciate the charges, the importance of his rights, the significance of waiving those rights, and to fully appreciate and understand the consequences of a plea of guilty to these charges?

"MS. LOCKE: No, Your Honor.

8

"THE COURT: Based on my observations of and communications with and conversation with Mr. Gonzales over most of this morning, I don't either. I find he is emotionally agitated today, but that's understandable. But I do find he's very focused on things. He understands why we're here, what we're doing, what the charges are. He understands what his rights are.

"Mr. Gonzales, in the 17 CR 1844 case, and very recently in the 17 CR 1416 case, you are represented by Ms. Taryn Locke. Have you been satisfied with her services as your attorney in both of these cases, albeit on a more limited basis in the 17 CR 1416 case?

"THE DEFENDANT: She's fine. Yes, sir.

"THE COURT: And in the 17 CR 1416 case, you had been represented by Steven Mank, but he was relieved this morning. And you operated briefly pro se in this case. And you entered into some plea agreement understanding with Ms. Osburn, and now Ms. Locke has been appointed to represent you in the 17 CR 1416 case. Do you feel that has placed any situation of coercion or feeling that you're forced into this plea agreement?

"THE DEFENDANT: No, sir.

"THE COURT: Are you entering this plea agreement simply because it's what you want to do under all the circumstances?

"THE DEFENDANT: I think it's the right thing to do."

Gonzales stated that he did not have any questions about "any of the legal rights, choices, or options contained" in the plea and acknowledgment of rights. He stated he fully understood all his legal rights, choices, and options in both cases. The trial court accepted Gonzales' pleas.

Gonzales moved to withdraw his plea a little over a month later on January 2, 2018. Then, on February 16, 2018, he filed an amended motion to withdraw his plea.

The trial court held a hearing on those motions on May 8 and 9, 2018. During the hearing, Gonzales testified that he was jailed after he was charged in the second case. He stated that Mank visited him one time shortly after he was jailed, one time in mid-August, and once six days before the scheduled trial in late November. He stated that during the

9

November visit, Mank told him that the assistant district attorney (ADA) would use the 17 CR 1416 case as a "steppingstone" to worsen his sentence in his other case. He also stated that during this meeting, Mank mentioned that Gonzales had failed to pay him and that he would "get a defense equal to what [he'd] paid" which at that point was about $1,500. He stated that he asked Mank about conflicting police reports that he believed would support his version of events and Mank "act[ed] like that report didn't exist" and said he would not use it. He also stated that he told Mank he wanted to argue self-defense, but Mank stated that it would not matter.

Gonzales recounted his private meeting with Mank in the chambers library on November 27, 2017. He stated that in the library, he pressed Mank about his lack of a plan for a defense. He stated that Mank became frustrated and told him, "[Y]ou know what, you're so smart, you know what you want to do . . . why don't you just go pro se." He stated that he responded:  "[W]hat choice do I have?" He stated that Mank then walked out.

Gonzales described the meeting immediately after in the judge's chambers with Mank, Osburn, and the judge. He stated that the judge advised him about his rights, and he "was trying to ask all the right questions. But then something in [his] mind was telling [him], you're doing the wrong thing" and he "didn't remember [the judge] ever going back to finishing the—finishing the pro se procedure." He then stated that he "at one point" "just told Mank, Mank, just do the case, you know." Then, he said the judge stated he would relieve Mank, appoint conflict counsel, and continue the case, but that Gonzales could speak with the ADA for a few minutes.

Gonzales stated that he did speak to Osburn about both cases. He asked for certain deal terms and she said no, that only the plea deal she had offered back in July or August was on the table. Gonzales had previously declined this deal. He stated that he told

10

Osburn that he thought he could win the first case if he had "proper counsel." Nevertheless, he stated that he accepted the deal this time.

Then, Gonzales stated that the case proceeded to a plea hearing that same day. Locke was present with him at the hearing. He stated that he did not tell Locke he did not want the plea. Locke showed Gonzales the plea paperwork: He "glanced it over" and thought he asked her one question about it. He signed the plea agreement, he also signed the defendant's acknowledgement of rights and entry of plea. He further stated that he signed something about withdrawing motions he had filed, including a motion to remove Locke as counsel. He testified that Locke knew he had PTSD and anxiety and that Mank knew or should have known as well. He stated that when he accepted the plea agreement, he did not think there was any other viable way to resolve the cases.

On cross-examination, Gonzales admitted that he personally hired Mank while he was out on bond. He met with Mank and Mank gave him some police reports to review. He also stated that when he was arrested after being charged with the second crime, Mank visited him in jail and provided him the State's witness list. Later, Mank gave Gonzales the State's proposed jury instructions and reviewed them with him. The two also discussed a self-defense argument, and Mank said he thought it was not appropriate. He stated that Mank visited him in jail three times in the week before his trial. He admitted that after the private discussion in the chambers library, he told the judge that "at this point if you're going to let him [Mank] go, then I would ask to speak with Ms. Osburn just for a short three minutes." He also admitted that he stated, "[I]f me and her can't conclude on something because I was going to do that with Mr. Mank anyways," because he thought he and Mank might work out a plea agreement for the case that day.

Gonzales stated that he did not remember the court asking if he wanted Locke to represent him at the plea hearing. He stated that he remembered signing papers to

11

withdraw his motion for substitute counsel. When asked if he did not want Locke to represent him when he made his plea, he replied:

"I thought she was still my attorney on record so I didn't even know it was an issue honestly. Like I said, when I was sitting there, there was a lot of things going on in my mind. So I just thought it was a formality, to be quite honest with you, to have me sign the paperwork."

Then, he stated that when the court asked him if he wanted Locke appointed to represent him on 17 CR 1416 as well as 17 CR 1844, he said yes. He admitted that he told the judge that he was not coerced, threatened, or promised anything beyond the plea deal.

Then, Steven Mank testified for the State. He explained that Gonzales hired him to represent him in 17 CR 1416, but Gonzales did not pay him. Thus, Gonzales could not afford to hire Mank to defend him in 17 CR 1844. Mank stated that he never indicated that he would not defend Gonzales to the fullest because he had not been paid. Instead, he stated that he told Gonzales that he was disappointed that Gonzales had not paid him. He stated that he visited Gonzales three or four times before he was in custody and five or six times in jail, including twice the weekend before his trial. He stated that he had prepared a trial notebook and a 14-page outline for the trial. In terms of self-defense, he stated that he was prepared to raise self-defense based on a statement by the victim in one of the police reports that she had started things. He further stated that he included the PIK instruction on self-defense in his trial notebook, indicating that he anticipated this issue.

Mank testified that at the meeting in chambers on the day of the scheduled trial, things were "tense" and "somewhat confrontational" because Gonzales told the judge he thought Mank did not have his best interests at heart and was trying to "screw" him. He stated that when he met privately with Gonzales in the library, he did not threaten him.

12

He stated that he told Gonzales he no longer wanted to represent him because it was a "lose/lose situation because [Gonzales] was already setting [Mank] up for failure. So if certain things didn't happen, [Mank] had screwed him. If certain things did happen, [Mank] had screwed him." Mank stated several times before the day of the scheduled trial Gonzales stated that he could do a better job representing himself than Mank could. Gonzales reiterated this claim in the library and Mank told him, "if you feel that you can represent yourself better than me, do it." Gonzales eventually stated that he thought that's what he wanted to do.

Mank stated that he did not recall Gonzales mentioning he wanted recordings of jail calls. He also stated that he did not recall Gonzales saying anything about his father's health. Mank stated that Gonzales never mentioned anxiety or PTSD. He further stated that the morning of the scheduled trial, Gonzales had not stated anything to him about wanting to reach a plea agreement.

Then, Locke testified. She stated that she was appointed to represent Gonzales in 17 CR 1844. She stated that she believed she was his attorney several different times during their attorney and client relationship:  Then he proceeded pro se, then she was reappointed, and then he proceeded pro se again. She stated that she received a phone call on November 27, 2017, that Gonzales wanted to accept a plea agreement and she needed to come to court. She stated that when she arrived at court, she talked with Gonzales about the plea agreement before it was entered on the record. She stated that Gonzales withdrew the motion to have her removed from the 17 CR 1844 case and then asked to have her appointed in his other case as well. She stated that her understanding was that the plea agreement was what Gonzales wanted to do, and she was just brought in so he would have an attorney with him during the plea. She further stated that she went over the acknowledgment of rights and plea document with him. She also stated that he did not have very many questions and did not say he felt threatened, coerced, or forced to accept the plea agreement. Moreover, Gonzales did not tell her he was pleading because of his

13

anxiety or PTSD. She stated that she did not remember Gonzales signing anything about withdrawing his motion for substitute counsel; she thought they just took care of it verbally on the record.

In closing, Gonzales argued that he should be allowed to withdraw his plea because the *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006), factors weighed in favor of allowing him to withdraw his plea. He highlighted his loss of faith in Mank and conflict with him and argued that "by the totality of the circumstances, [he was] coerced into" pleading. The State argued that Gonzales should not be allowed to withdraw his plea. The State argued that Gonzales had competent counsel, had the opportunity to claim he was coerced or under duress but did not do so, and, in fact, was the one who pursued a plea deal the day of the scheduled trial. The State also emphasized that in the courtroom immediately after pleading, Gonzales told a family friend of the victim's to tell the victim that he was sorry and took responsibility.

In denying Gonzales' motion to withdraw his plea, the trial court relied heavily on the transcripts from the pretrial meeting in chambers as well as the plea hearing. The trial court concluded: "I find that . . . Mr. Gonzales was represented by competent counsel, both Mr. Mank and Ms. Locke. That Mr. Gonzales was not misled. Was not coerced. Was not mistreated or was not unfairly taken advantage of. I find the plea was fairly and understandably made."

The trial court sentenced Gonzales to 30 months in prison in 17 CR 1416. In 17 CR 1844, the trial court sentenced Gonzales to 122 months in prison for the felony count and 12 months in jail for the misdemeanor count. Gonzales timely appealed the denial of his motion to withdraw plea as well as his sentence.

14

*Did the Trial Court Err by Failing to Examine the Voluntariness of Gonzales'*
*Withdrawal of His Motion for Substitute Counsel?*

Gonzales first argues that the trial court erred by not appropriately determining the voluntariness of his withdrawal of his motion for substitute counsel before he pleaded guilty. The State contends that this court lacks jurisdiction over Gonzales' first argument because the issue was not identified in either of his notices of appeal.

While Gonzales frames the issues somewhat differently, his argument amounts to a claim that this court should reverse the trial court's denial of his motion to withdraw his plea because his right to conflict-free counsel under the Sixth Amendment to the United States Constitution was violated at his initial plea hearing. Nevertheless, we cannot reach the merits of this issue because Gonzales is raising a constitutional argument for the first time on appeal, and he has failed to explain why this court should nevertheless consider this issue for the first time on appeal. As our Supreme Court pointed out in *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015), appellate courts may make an exception to this rule, however, the appellant must explain why this is properly before the court:

"While we will not generally review constitutional claims raised for the first time on appeal, we do make exceptions:

'Despite the general rule, appellate courts may consider constitutional issues raised for the first time on appeal if the issue falls within one of three recognized exceptions: (1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court is right for the wrong reason. *State v. Spotts,* 288 Kan. 650, 652, 206 P.3d 510 (2009).' *State v. Dukes,* 290 Kan. 485, 488, 231 P.3d 558 (2010).

"But an exception must be invoked by the party asserting the claim for the first time on appeal. Kansas Supreme Court Rule 6.02(a)(5) (2014 Kan. Ct. R. Annot. 41),

15

describing the required contents of an appellant's brief, clearly states those briefs must include:

'The arguments and authorities relied on, separated by issue if there is more than one. Each issue must begin with citation to the appropriate standard of appellate review and a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on. *If the issue was not raised below, there must be an explanation why the issue is properly before the court.*' (Emphasis added.)

"We have recently reiterated that Rule 6.02(a)(5) means what it says and is ignored at a litigant's own peril. See *State v. Williams,* 298 Kan. 1075, 1085, 319 P.3d 528 (2014)."

Here, Gonzales did not discuss the trial court's alleged failure to inquire about the knowingness and/or voluntariness of his plea when he argued for plea withdrawal below. Gonzales' first motion to withdraw his plea does not allege any issues with Locke beyond her failure to connect Gonzales' "emotional state" during the plea hearing with his PTSD. Instead, the motion focused on Mank and the fact that Gonzales was allowed to negotiate with Osburn pro se. Gonzales' amended motion to withdraw also focused on his qualms with Mank and his pro se status while negotiating a plea with Osburn. It mentions Locke only twice. First, Gonzales argued that because Locke was his counsel in 17 CR 1844 on November 27, 2017, she should have been brought in to represent him during plea negotiations since she was available 20 minutes later for the plea hearing itself. Second, he reiterated that Locke should have known that his PTSD was making him plead.

During closing arguments on Gonzales' motion to withdraw his pleas, the most Gonzales' attorney stated about the issue was as follows: "Ms. Locke—the defendant had a motion pending to fire Ms. Locke at that time, but he withdrew that on the record before entering the plea." He did not argue that Locke had a conflict or that Gonzales' withdrawal of his motion to fire Locke was not voluntary or knowing. He did not argue that Locke's continued representation of Gonzales in 17 CR 1844 or appointment to represent Gonzales in 17 CR 1416 violated his Sixth Amendment rights. The closest

16

Gonzales came to raising this issue before the trial court was in his pro se notice of appeal filed *after* the judge denied his motion to withdraw his plea, and even then he did not specifically address Locke's continued representation of him. Rather, he asserted that his Sixth Amendment rights were violated "in each and every step and stage of proseration, [*sic*] in this instant 'plea discussions' for both cases."

Gonzales also does not explain why we should reach his argument about the voluntariness of his withdrawal of his motion to fire Locke on appeal. Instead, he erroneously claims that "[B]y filing the motion, in addition to [Locke] raising the issue again during the hearing, Locke has preserved this issue for appellate review." Nevertheless, as detailed above, Gonzales did not argue that Locke's continued representation was error. He just mentioned the motion to withdraw without any argument whatsoever. Gonzales also references his notice of appeal which stated his Sixth Amendment right to counsel was violated "in each and every step and stage of proseration [*sic*]." As mentioned earlier, this notice of appeal was filed after Gonzales' motion to withdraw was denied. The record establishes that Gonzales, in fact, failed to argue the voluntariness of his withdrawal of his motion to fire Locke before the trial court. Because Gonzales does not acknowledge that he failed to raise this argument before the trial court, he also does not invoke one of the three recognized exceptions to justify us reaching this issue for the first time on appeal. Thus, Gonzales has failed to comply with Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34), and we are precluded from reaching this argument on its merits.

*Did the Trial Court Err by Denying Gonzales' Motion to Withdraw His Plea?*

Gonzales next argues that the trial court made two reversible errors when denying his motion to withdraw his plea. First, he argues that the trial court made factual findings unsupported by the evidence. Second, he argues that no reasonable person would agree with the trial court's conclusion that he knowingly and voluntarily pleaded guilty. The

17

State argues that we should affirm the trial court's denial of Gonzales' motion to withdraw his plea.

Gonzales preserved this issue for our review by moving to withdraw his pleas, having the motion denied, and appealing his convictions.

Before sentencing, a trial court may grant a defendant's motion to withdraw his or her guilty plea "for good cause shown"; this decision lies within the trial court's discretion. *State v. DeAnda*, 307 Kan. 500, 502, 411 P.3d 330 (2018); see also K.S.A. 2018 Supp. 22-3210(d)(1).

"An appellate court reviews a district court's decision to deny a plea withdrawal motion and the underlying determination that the defendant has not met the burden to show good cause for abuse of discretion. *State v. Reu-El*, 306 Kan. 460, Syl. ¶ 1, 394 P.3d 884 (2017)." *State v. Woodring*, 309 Kan. 379, 380, 435 P.3d 54 (2019). A trial court abuses its discretion if it bases a decision on an error of law or fact, or if no reasonable person could agree with the trial court's decision. A trial court makes an error of fact if substantial competent evidence does not support a factual finding. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011). An appellate court may not reweigh evidence or reassess witness credibility when reviewing for abuse of discretion. *Reu-El*, 306 Kan. 460, Syl. ¶ 1. The party arguing the trial court abused its discretion bears the burden to show such an abuse. *State v. Denmark-Wagner*, 292 Kan. 870, 875, 258 P.3d 960 (2011).

Here, the trial court denied Gonzales' presentence motion to withdraw his plea. The trial court concluded that Gonzales "was represented by competent counsel, both Mr. Mank and Ms. Locke. That Mr. Gonzales was not misled. Was not coerced. Was not mistreated or was not unfairly taken advantage of . . . the plea was fairly and understandably made." The trial court also concluded that Gonzales' PTSD and anxiety

18

did not render Gonzales incapable of understanding the charges against him, his rights, the effect of a plea, or his potential sentence. The trial court concluded that no good cause existed to allow Gonzales to withdraw his plea. It stated: "Mr. Gonzales gave every indication objectively that he knew what was he doing, he did what he wanted to do, he entered a plea in both cases. He admitted guilt in both cases."

On appeal, Gonzales contends that the trial court "committed an error of fact when it determined that Gonzales never raised an issue concerning Locke's representation." He cites the following excerpt from the trial court's ruling:

> "Pursuant to the record, pursuant to the testimony, pursuant to the motion, Mr. Gonzales has not specifically raised any basis or claim against Ms. Locke for ineffective assistance of counsel or any basis upon which to withdraw the plea based on her representation of him. Relative to Ms. Locke, no *Edgar* or non *Edgar* factors were alleged against her or testified about by Mr. Gonzales relative to Ms. Locke. There is no basis to set aside the plea on any factor relating to Ms. Locke."

Gonzales contends that the trial court's factual finding that "no *Edgar* or non *Edgar* factors were alleged against" Locke was not supported by substantial competent evidence and, thus, the trial court's ruling was based on an error of fact. The *Edgar* factors are three factors a trial court may consider when analyzing a defendant's motion to withdraw a plea. They include: (1) whether the defendant had competent counsel; (2) whether the defendant was misled, mistreated, coerced, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *Edgar*, 281 Kan. at 36. The factors are nonexhaustive and not meant to be applied mechanically. *State v. Garcia,* 295 Kan. 53, 63, 283 P.3d 165 (2012).

On appeal, Gonzales says he did plead that Locke was ineffective—that she "was not present for the meeting in chambers, she was not aware of current

19

matters regarding his mental state, and she was unaware of matters related directly to 17CR1416." He further claims that he "alluded that Locke failed to reasonably advise him of the conditions of the plea agreement or his acknowledgment of rights." He correctly points out that the trial court instructed Locke that she could testify about her conversations with Gonzales because "since he's raised allegations of ineffective assistance and force and coercion, to answer the questions. They do relate, and you're relieved under the attorney/client privilege opinion on that matter."

Gonzales' motions can be generously construed as raising a claim that Locke was ineffective for not connecting Gonzales' emotional state in the courtroom with his PTSD. For example, Gonzales alleged the following in his two motions:  "Locke saw defendant was in a [*sic*] emotional state but didn't have any idea the details of it. Defendant was in a 'manic episode'"; "Locke did see Gonzales in court room for plea hearing saw Gonzales was in emotional state but didn't have any details of it." Nevertheless, the trial court did state earlier in the hearing that Gonzales had raised ineffective assistance claims against Locke.

Gonzales, however, fails to show that the trial court here "based" its decision on an error of fact, as is required to show abuse of discretion. See *State v. Staten*, 304 Kan. 957, 970, 377 P.3d 427 (2016) ("A court abuses judicial discretion if its action is . . . [3] *based* on an error of fact." [Emphasis added.]). To show abuse of discretion a party must establish more than the mere fact that the trial court made an error of fact; it must establish that the trial court "based" its decision on an error of fact. Here, Gonzales cannot establish that the trial court "based" its decision on an error of fact because the trial court, later in its decision, contradicted and remedied this erroneous factual finding. The trial court held, "I find that Mr. Gonzales was represented by competent counsel, both by Mr. Mank and Ms. Locke." Gonzales did not object to the trial court's conflicting factual

20

findings. This court cannot reweigh the evidence when reviewing for abuse of discretion and must give deference to a trial court's factual findings. *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011). Gonzales has not born his burden to show the trial court "based" its ruling on an error of fact because even though the trial court erroneously stated that Gonzales never claimed Locke was ineffective, it later remedied this error by explicitly finding that Locke provided effective assistance of counsel, and Gonzales did not object to this finding.

Next, Gonzales argues that the trial court abused its discretion because no reasonable person could agree with its decision to deny Gonzales' motion to withdraw his plea. He asks this court to credit his testimony about his alleged mental distress, allegations of ineffective counsel, and claims that he actually did not want to represent himself over the contradictory testimony of Locke and Mank and the transcripts of the pretrial hearing and the plea hearing. He even admits on appeal that "Locke and Mank disputed most of the above facts" but argues "nevertheless, based on these facts, no reasonable person could find that Gonzales' pleas were legitimate." Thus, Gonzales concedes that to hold in his favor on this issue, we would have to reweigh the evidence and credit his testimony below even though the trial court apparently did not. We are prohibited from reweighing evidence when reviewing for abuse of discretion. 291 Kan. at 855. As a result, Gonzales' argument fails.

Affirmed.