NOT DESIGNATED FOR PUBLICATION

No. 124,571

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JUAN GUEVARA JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ford District Court; SIDNEY R. THOMAS, judge. Opinion filed January 6, 2023. Affirmed.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GARDNER and CLINE, JJ.

PER CURIAM: Juan Guevara Jr. appeals the denial of his presentence motion to withdraw his plea. Guevara claims that he was misled or coerced into entering a plea agreement because he needed to be released from jail to pay his mortgage and he thought he could withdraw his plea at will. Guevara also asserts that he lacked effective assistance of counsel when he decided to plead because his attorney reviewed only some of the State's discovery before advising him and never told him that the district court would probably deny a motion to withdraw his plea. Finding no error, we affirm.

1

*Factual and Procedural Background*

The State charged Juan Guevara Jr. with rape, aggravated kidnapping, aggravated sexual battery, and aggravated battery for crimes against A.Z. in June 2020. According to a police investigation, Guevara forced his penis into A.Z.'s mouth and forcibly assaulted her body before he dragged her up the stairs of his home, punched her in the face, and raped her. Police arrested Guevara for these acts in July 2020.

At his first appearance, the district court set Guevara's bond as a surety bond for $250,000. About a week later, the district court modified Guevara's bond to $75,000. Attorney Lori Jensen entered her appearance as Guevara's counsel the same day. Guevara apparently did not object to the district court's bond determinations but later claimed he had no way to secure even the lesser amount.

Guevara and the State began plea negotiations. Guevara was significantly concerned about being released on an own recognizance (OR) bond during these negotiations because he wanted to make his mortgage payments and thought he could not do so in jail. Ultimately, the parties agreed that Guevara would plead no contest to aggravated sexual battery and aggravated battery and the State would dismiss the remaining counts of rape and aggravated kidnapping and not oppose Guevara's request for probation.

At his plea hearing, Guevara waived his right to a preliminary hearing and in accordance with the plea agreement entered a no contest plea to aggravated battery and sexual battery. The district court conducted the standard plea colloquy, accepted Guevara's plea, and modified Guevara's bond to a $25,000 OR bond with ankle monitoring.

2

About a month later, Jensen moved to withdraw as Guevara's counsel, arguing the two had a breakdown in their relationship. The district court granted Jensen's motion and appointed Steve Cott to replace her.

In December, before sentencing, Guevara sent a letter to the district court asking to withdraw his plea, claiming he was innocent and that the State's evidence proved it. Guevara argued that A.Z. had lied about the incident. And in other documents Guevara suggested that the surveillance video evidence the police took from his home would show that he never dragged A.Z. up the stairs. Guevara also argued that A.Z. and others stated that the sexual intercourse between him and A.Z. was consensual.

A few days after Guevara filed that letter, Cott moved to continue the sentencing hearing and the district court granted the continuance. Guevara sent a second letter to the district court seeking the appointment of new counsel and claiming that Cott was not responding to Guevara's calls or emails. Cott also moved to withdraw. Guevara then moved to withdraw his plea, asserting that Jensen had been ineffective and that he had entered his plea based only on "the fact that he might lose his house due to being unable to make mortgage payments while in custody."

At the hearing on these motions, Cott explained that he and Guevara had a fundamental disagreement about how to go forward and about what a motion to withdraw a plea entails. Guevara claimed he had never had a chance to sit down with Cott to discuss his case. Cott refuted that claim, stating that the two had spoken over the phone and in his office. The district court granted Cott's motion to withdraw as counsel, finding a breakdown of communication. The district court then appointed replacement counsel before holding a hearing on Guevara's motion to withdraw his plea.

Jensen testified at the hearing on Guevara's motion to withdraw his plea. Jensen had around 14 years of legal experience and had done over 50 jury trials, 20 of which involved level three felonies or greater. Jensen had represented Guevara before. One of his municipal court cases was dropped based on a lack of evidence, and another case was resolved "favorably" to Guevara.

Jensen first met Guevara in this case on July 16, 2020. She could not recall whether she received the State's response to her discovery request on July 20, 2020, but that was the date listed on the discovery materials in her personal records. That discovery consisted of 59 pages of written materials and 5 discs. Jensen "[p]robably" reviewed the written discovery, possibly the day before Guevara entered his plea. Jensen did not, however, review the discs. She implied that she did not discuss the discovery with Guevara but talked to him generally about his case and "got his point of view on it" before he entered his plea. In total, Jensen spent about 45 minutes with Guevara, including a 30-minute initial meeting and a 15-minute meeting right before Guevara entered his plea.

During those discussions, Jensen explained the charges, the possible associated sentences and fines, Guevara's trial rights, and the waiver of those trial rights in plea proceedings. She also went through the details of the State's plea offer with him. Guevara appeared to understand everything "very well." Guevara knew that "he had every right, despite a plea offer being made, to proceed to trial in this matter." And Guevara had originally planned to go to trial but changed his mind after discussing the plea offer. Guevara seemed pleased with his decision to enter a plea because he wanted out of jail, which was his "overriding concern."

Jensen gave Guevara copies of the written discovery when she met with him right before he waived his preliminary hearing and entered his plea. Guevara did not express

any concern about the discovery material then. Instead, Guevara was mainly concerned with getting out of jail and back to work to make his house payment.

When asked whether Jensen discussed with Guevara his ability to "change his mind" about his plea after entering it, Jensen responded that she had told Guevara that "on some occasions people were allowed to withdraw their plea," but she did not tell him that withdrawal was guaranteed. Guevara never suggested to her that he wanted to withdraw his plea.

Guevara also testified. He conceded that he knew what he was charged with, the possible penalties for those crimes, and the possible consequences associated with the withdrawal of his plea. And before he entered his plea, he discussed with Jensen the possibility of withdrawing it. But contrary to Jensen's testimony, Guevara "recall[ed]" from that conversation that he "would be able to withdraw" his plea in the future. Guevara would not have entered a plea if he thought he could not withdraw it. On cross-examination, Guevara admitted that he had no intention of "keeping [his] bargain" with the State when he agreed to enter a plea because he always intended to withdraw his plea. Guevara entered his plea only because he "wanted out of jail."

In their closing arguments, the parties applied the facts here to the factors outlined in *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). Guevara claimed that he could not have understandingly entered his plea after receiving and reviewing the discovery for just 15 minutes. He also argued that because he believed he could withdraw his plea at any time as a "do-over," he did not understand "the gravity and the severity" of entering his plea.

Guevara also claimed that Jensen spent too little time with him to let him know what he was doing and why. Although he did not allege that Jensen had said he could

5

freely withdraw his plea or that she had intentionally misled him, Guevara suggested that he was misled in some way and that he felt "pressured due to his situation."

The State argued that Jensen had provided effective representation, in part by appropriately advising Guevara of the State's charges, the possible penalties for those crimes, the terms of the State's plea offer, and the consequences of that plea. The State also claimed that even if the bond modification were Guevara's "greatest motivation" for entering his plea, that alone was not good cause to allow him to withdraw his plea because it failed to show that the plea was not "knowingly, intelligently, and informedly made."

After considering the evidence in light of the *Edgar* factors, the district court denied Guevara's motion to withdraw his plea. The district court found that Guevara believed he could "change his mind," but the court believed Jensen's testimony and that she had not advised him of that or otherwise misled or misadvised him. The district court also found that Guevara clearly understood the potential penalties and was not misled, coerced, mistreated, or unfairly taken advantage of. And the court found that Guevara understood what he was doing when deciding to plea, finding "the evidence and advice he received from counsel, and the admonishments received from the Court, made it very clear what the options and outcomes were to be, and . . . he knowingly chose the plea agreement as the best option that he wanted and . . . thought was best."

The district court later sentenced Guevara to 41 months in prison for the aggravated sexual battery but granted probation for 36 months, as Guevara requested. The district court also imposed a concurrent sentence of 12 months in prison but granted 36 months' probation for the aggravated battery.

Guevara appeals the denial of his motion to withdraw his plea.

6

*Did the District Court Err in Denying Guevara's Motion to Withdraw His Plea?*

*Basic Legal Principles*

A no contest plea "for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." K.S.A. 2019 Supp. 22-3210(d)(1). When determining whether good cause exists to withdraw a presentence plea, a district court considers three factors: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *Edgar*, 281 Kan. at 36. These factors are "viable benchmarks for judicial discretion," but "[a]ll of the . . . factors need not apply in a defendant's favor in every case, and other factors may be duly considered in the district judge's discretionary decision on the existence or nonexistence of good cause." *State v. Aguilar*, 290 Kan. 506, 512-13, 231 P.3d 563 (2010). But a defendant's "mere 'change of mind'" is insufficient to withdraw a plea without any evidence the defendant can satisfy the *Edgar* factors. *State v. Woodring*, 309 Kan. 379, 384, 435 P.3d 54 (2019).

This court reviews a district court's denial of a presentence motion to withdraw a plea for an abuse of discretion. A district court abuses its discretion when its decision is based on an error of fact or law, or if no reasonable person would agree with the decision. As the party alleging error, Guevara carries the burden of proving the district court abused its discretion. This court will not reweigh evidence or assess witness credibility in addressing his claim. See *Woodring*, 309 Kan. at 380.

Guevara claims that he established good cause to withdraw his plea because he met each of the three *Edgar* factors:

7

- He needed to be released from jail to make his house payment;

- He thought that he could withdraw his plea at will;

- Attorney Jensen rushed him into entering a plea without first reviewing all the discovery and misinformed him about plea withdrawal; and

- The State improperly used his bond as leverage to get his plea.

The State counters that no evidence shows that Jensen or the prosecutor engaged in any misleading or coercive conduct, and that any financial or other coercion Guevara may have felt came from his personal considerations that do not constitute good cause to withdraw a plea.

*Guevara Failed to Preserve His Bond Leverage Argument.*

We first consider Guevara's claim that he was initially given an excessive bond and that the State either caused this or at least knew about it and used this as leverage to coerce his guilty plea.

But we must first address a procedural matter—the State's claim that Guevara failed to preserve this argument. Generally, issues not raised to the district court cannot be raised on appeal. *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022). Guevara does not overtly concede that this claim is unpreserved, yet he excludes it from the exhaustive list of claims he raised in the district court. He thus tacitly concedes that this argument is unpreserved. Our review of the record confirms that. And Guevara fails to argue that any exception applies to permit our decision of this issue for the first time on appeal. See *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021).

And factual questions are unanswered. The record on appeal does not show the State suggested that the agreement include a provision for bond modification. In fact,

8

because the record does not include a copy of the plea agreement, it is not shown that the State agreed to any bond modification. And a request for bond modification is usually a matter decided by the trial court. See K.S.A. 2019 Supp. 22-2802(8). We cannot review an unpreserved claim with unresolved fact issues. *Allen*, 314 Kan. at 289 (finding abuse of discretion in appellate court's review of an unpreserved claim with unresolved fact issues).

Because no exceptions have been argued to the general rule that issues not raised before the district court cannot be raised on appeal, and because facts essential to Guevara's claim are not in the record, we decline to reach the merits of this claim. See *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019) (requiring explanation for review of unpreserved claim); *State v. Rhoiney*, 314 Kan. 497, 500, 501 P.3d 368 (2021) (appellate court not obligated to review unpreserved claims).

As for Guevara's remaining claims, we apply the *Edgar* factors.

(1) *Whether Guevara was represented by competent counsel*

Guevara contends that Jensen's representation was "lackluster" and thus incompetent because she failed to review all the discovery before she rushed him into accepting the plea agreement. Guevara asserts that Jensen could not effectively counsel his decision to enter a plea instead of going to trial without having reviewed all the evidence. Guevara also impliedly argues that because Jensen did not review the discs, she missed exculpatory evidence.

We agree that "lackluster advocacy" may be enough to show incompetent counsel under the first *Edgar* factor. See *Aguilar*, 290 Kan. at 513. The district court correctly applied this standard when deciding Guevara's motion.

9

But contrary to the blame he places on Jensen, Guevara has never denied that he was the force behind the speediness in which he accepted his plea. Guevara directed Jensen to quickly secure his release from jail. And even after Jensen handed him the written discovery materials, Guevara decided to continue with his plea hearing about 15 minutes later. Similarly, in *State v. Grubb*, No. 120,490, 2020 WL 1814306 (Kan. App. 2020) (unpublished opinion), this court considered a defendant's request to withdraw his plea because neither he nor his attorney had seen the discovery. The *Grubb* panel found that the defendant's desire to quickly reach an agreement undercut his claim of entering an unknowing plea, because he knew that his attorney had not viewed discovery. 2020 WL 1814306, at *4.

Although it is unclear what Guevara knew about the extent of Jensen's discovery review, Guevara pushed for a quick resolution. And Jensen testified that Guevara understood what he was doing. The record also suggests that Guevara had at least some understanding of what the video evidence might show because before he entered his plea, he told Jensen that he kept a security camera in his home. Thus his knowledge of where the video was located and of what the video tape might reveal was greater than Jensen's.

The record does not show that Jensen pressed, much less advised, Guevara to plead. The record establishes only that Jensen presented Guevara with the State's offer, which the district court correctly noted she was required to do. The district court, that had observed Guevara several times throughout the pretrial proceedings, characterized him as "a relatively confident man." The court rejected the notion that Guevara could be "pushed around very easily, at all," explaining that "[w]hen [Guevara] has his idea of whatever he thinks, he's going to be heard on that."

Guevara correctly argues that Jensen had a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. See

*State v. Hedges*, 269 Kan. 895, 914, 8 P.3d 1259 (2000). He does not, however, show that Jensen was statutorily required or otherwise obligated to review the video evidence before presenting the State's plea offer to Guevara or advising him about a plea.

And after reviewing the record, we cannot tell what Jensen's review of the discs could have accomplished. Guevara did not admit any portion of the discovery into the record when arguing his motion in the district court, and those materials are not a part of the record on appeal. Nor did he make a proffer of what the discs contained. Guevara had the burden to designate a record sufficient to establish his argument. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013). Because he did not do so, the panel cannot determine whether Jensen's investigation of the discovery materials was flawed.

But from what can be gleaned from the record, we find that the discovery likely does not include exculpatory evidence as Guevara suggests. In an attachment to Guevara's first letter to the district court, Guevara argued that the surveillance footage from his home would show that he did not drag A.Z. up the stairs. The report of the incident stated that Guevara dragged A.Z. up the stairs and into another room, which was likely the basis for the State's charge of aggravated kidnapping, which it dismissed. Yet Guevara did not allege that the disc would show anything else. Guevara also claimed that because A.Z. told police that she wanted to have sex with him, the State could not prove rape. The report possibly supports this argument because A.Z. indicated that she "wanted" the "sexual intercourse" that she reported occurred during the incident. Yet the State dismissed the rape charge as well.

Guevara did not point to any evidence that would show he did not commit aggravated sexual battery or aggravated battery, the two charges to which he pleaded. To the contrary, the record suggests that the State based the charges of aggravated sexual

11

battery and aggravated battery at least in part on a forced oral penetration and other physical violence against A.Z. But even if A.Z. suggested that the sexual intercourse was consensual, A.Z. told police she did not consent to the forced oral sex. And A.Z.'s account of the incident suggests that Guevara's other abusive acts happened in various rooms of Guevara's home, not just in whatever fixed location his security camera was apparently stationed in. Under these circumstances, we find no lackluster performance.

(2) *Whether Guevara was misled, coerced, mistreated, or unfairly taken advantage of*

*Guevara's Monthly House Payments*

As his primary claim of coercion, Guevara argues that after his arrest, he felt significantly pressured to accept the plea agreement because he needed to get out of jail quickly to make his house payments, which he thought he could not do while in jail. On appeal, he states his belief that if not promptly released, he would lose his house for which he had made monthly payments for the last 15 years.

Guevara also argues that pretrial detention is coercive, citing a law journal article published by the American Psychological Association. In his reply brief, Guevara argues that his looming house payments and pretrial detention constituted significant financial coercion.

Yet Guevara did not submit any proof to support his testimony that he would lose his home if he remained in pretrial detention. And even if he would lose his house after a single delinquent payment, Guevara testified that he was not employed around this time. So it is unclear whether Guevara's pretrial detention created or merely exacerbated his fear about his inability to pay for his home.

Though relevant, these unresolved matters do not change the outcome of this issue. Our appellate courts will not invalidate a defendant's decision to plead based on allegations of self-coercion, as the State correctly argues. "Every man charged with crime is influenced by personal considerations which may later not appear valid to him, but psychological self-coercion is not the coercion necessary in law to destroy an otherwise voluntary plea of guilty." *Williams v. State*, 197 Kan. 708, 711, 421 P.2d 194 (1966).

The State compares Guevara's argument to others rejected because any coercion stemmed from personal considerations, rather than from the defendant's attorney or the prosecution. For example, in *State v. Denmark-Wagner*, 292 Kan. 870, 258 P.3d 960 (2011), the defendant argued that he had been coerced into pleading guilty because his mother and sister wanted to see him sooner and hug him during visitation. The court rejected the motion to withdraw the plea, finding that although the defendant "appears to have given heavy weight to the advice of others, . . . he made his own decision. . . . Whatever family pressure existed did not rise to the level of good cause." 292 Kan. at 877.

Similarly, in *Wippel v. State*, 203 Kan. 207, 209, 453 P.2d 43 (1969), the defendant entered a guilty plea with the "understanding" that his children would not be placed in foster homes because he would serve a short enough sentence to prevent that. The court rejected the motion to withdraw the plea, finding "[t]hese personal considerations . . . may have been of some psychological influence on his decision to plead guilty; but personal considerations of this nature do not constitute the coercion required to vitiate an otherwise voluntary plea. (*Williams v. State*, 197 Kan. 708, 421 P.2d 194.)." 203 Kan. at 209.

This court's opinions in *State v. Heard*, No. 120,531, 2019 WL 11868571 (Kan. App. 2019) (unpublished opinion), and *State v. Bloom*, No. 98,492, 2008 WL 4291546

13

(Kan. App. 2008) (unpublished opinion), show arguably more pressing matters were denied as claims of self-coercion. The defendants in those cases based claims of coercion on their desire to be with their children. In *Heard*, the defendant wanted to visit his newborn child. 2019 WL 11868571, at *2. And in *Bloom*, the defendant sought release after receiving news that her children were at risk of being placed for adoption. 2008 WL 4291546, at *3. Still, the pleas were not found to be involuntary as a result. *Heard*, 2019 WL 11868571, at *3-4; *Bloom*, 2008 WL 4291546, at *5.

These cases underscore that even in some of the most pressing contexts, a defendant's claim of self-coercion alone will not justify the withdrawal of a plea that is otherwise fairly and understandingly made. These cases support the district court's decision to deny Guevara's motion to withdraw his plea on the basis of coercion.

*Jensen's statements and Guevara's belief regarding plea withdrawal*

Next, Guevara argues that because he believed he could withdraw his plea at will, he was misled, coerced, mistreated, or unfairly taken advantage of, as provided under the second *Edgar* factor. Guevara does not assert that Jensen told him that he could withdraw his plea. But Guevara still blames Jensen for his misunderstanding that he could withdraw his plea at will.

But the district court squarely addressed and flatly rejected this suggestion. The district court found that Jensen's testimony stating she did not advise Guevara that he could withdraw his plea as a matter of right was more "reliable" than Guevara's testimony:

> "I believe counsel told him exactly what she said here. In some cases, you . . . can withdraw your plea. Didn't say in every case. But, that's what he wants to understand now. I find the evidence simply does not support that that's what she advised him, or

14

what anyone indicated was the appropriate legal standard, or that he could withdraw for any reason at all.

"That's just not in the evidence other than what he testified to from his mind. And, I don't find that as reliable."

This is a credibility finding that we will not second-guess on appeal. See *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016) (prohibiting appellate courts from questioning the trial court's credibility findings); *State v. Scott*, No. 118,979, 2019 WL 2559515, at *8 (Kan. App. 2019) (unpublished opinion) (applying this rule where the district court made a clear credibility finding against a defendant claiming his attorney told him he could withdraw his plea).

And although the district court found that Guevara believed that "he could always change his mind," i.e., withdraw his plea, this subjective belief does not establish good cause for withdrawal. As explained in *Heard* and *Bloom*, "'mistaken subjective impressions, in the absence of substantial objective proof showing that they were reasonably justified, do not provide sufficient grounds upon which to vacate a guilty plea.'" *Heard*, 2019 WL 11868571, at *3 (quoting *Bloom*, 2008 WL 4291546, at *4); see *Bachicha v. Shanks*, No. 94-2209, 1995 WL 539467, at *1 (10th Cir. 1995) (unpublished opinion) (finding self-serving testimony alone cannot establish a claim of ineffective assistance of counsel, requiring it accompany objective evidence); see also *State v. Schow*, 287 Kan. 529, 542, 197 P.3d 825 (2008) (agreeing with State that "defendant should not get relief from a plea decision simply because he or she determines, in hindsight, that it was not the most intelligent course of action"); *State v. Barnett*, No. 107,478, 2013 WL 1444746, at *4 (Kan. App. 2013) (unpublished opinion) ("A change of heart is not a sufficient reason to permit a defendant to withdraw his or her plea."). The record lacks substantial objective proof showing that Guevara's belief that he could withdraw his plea at will was reasonably justified.

Guevara also argues that Jensen should have advised him that "in most cases defendants *are not* allowed to withdraw their pleas," and that withdrawal "is the exception, rather than the rule." We agree that such advice would have been accurate. But Guevara does not provide legal support for his claim that such an advisory is required. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) (dismissing claim unsupported by pertinent authority). Nor are we aware of any.

And the record refutes that this type of advisory was warranted here. Defense counsel has the duty to advise a defendant about the range of potential penalties and discuss the possible choices available to the defendant to ensure a plea is voluntarily and intelligently made. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). Yet Guevara does not point to any law finding the advisory to be mandatory, so he may be precluded from claiming his plea was not understandingly made. Cf. *State v. Szczygiel*, 294 Kan. 642, 645, 279 P.3d 700 (2012) (rejecting claim that plea was unknowing because the government was not constitutionally or statutorily required to disclose material impeachment evidence before a plea). At any rate, Jensen testified that Guevara never indicated to her that he wanted or planned to withdraw his plea. So she had no reason to think that she needed to give Guevara more information about the likelihood of success of such a motion. She likewise lacked any reason to think that her statement would create confusion or misunderstanding. Guevara fails to show that the advisory was necessary under the circumstances.

(3) *Whether Guevara's Plea was Fairly and Understandingly Made*

Guevara's chief argument here is that his plea was not fairly and understandingly made because he thought he could withdraw his plea after being released if he wanted to. We have fully addressed that issue above. Further, the district court fulfilled its statutory duties for accepting a plea. Before the district court accepted Guevara's plea, it addressed

him personally and determined that his plea was voluntarily made and that he understood the nature of the charges against him and the consequences of his plea. See K.S.A. 2019 Supp. 22-3210(a)(3). Jensen also properly advised Guevara of the range of possible penalties to his plea and discussed the choices that he had. See *Kelly*, 298 Kan. at 970. This factor cuts against a plea withdrawal.

*Conclusion*

Guevara does not show any legal or factual error in the district court's decision to deny his motion to withdraw his plea. And a reasonable person could agree that Guevara did not establish good cause to withdraw his plea. We thus find no abuse of discretion in the district court's decision that it lacked statutory good cause to grant a presentence withdrawal of Guevara's plea.

Affirmed.